**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Earl Thomas ANDERSON,**
**Defendant–Appellant.**

No. 89–10059.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 15, 1989.

Decided Feb. 8, 1990.

642

Robert M. Holley, Asst. Federal Defender, Sacramento, Cal., for defendant-appellant.

Daniel S. Linhardt, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

\* Honorable Alicemarie H. Stotler, United States District Judge, Central District of California, sitting by designation.

Before WIGGINS and KOZINSKI, Circuit Judges, and STOTLER,\* District Judge.

STOTLER, District Judge:

Appellant Earl Thomas Anderson appeals his sentence, pursuant to the Sentencing Guidelines, imposed after a conditional plea of guilty to violation of Title 18 U.S.C. Section 2113(a) and (d), armed bank robbery. The District Court concluded that appellant was properly classified as an organizer, leader, manager or supervisor pursuant to Section 3B1.1(c) of the Guidelines despite his co-defendant's unawareness of the criminal enterprise until after commission of the unlawful act. We affirm the District Court's decision that a two-level increase pursuant to Section 3B1.1(c) is appropriate in this case.

I.

FACTS AND PROCEDURAL HISTORY

On December 11, 1987, Anderson and an individual named Alan Richards were observed by law enforcement officers "casing" a Security Pacific Bank in Redding, California. Six days later Anderson robbed, at gunpoint, that same bank.

Subsequent to the robbery, police found appellant's car on Niles Lane. The officers gave chase when appellant and his co-defendant Gary Lee Hambley drove away. After their arrest, Hambley told officers he was unaware Anderson was going to commit a robbery since Anderson had picked him up that morning on the ruse of going to work. Hambley maintained that after they parked the car near the bank, Anderson told him to open the trunk and wait; thereafter, Anderson returned, jumped into the truck and instructed Hambley to drive to the Niles Street loca-

tion. Upon arriving there, Anderson told Hambley he had just robbed a bank.

On December 18, 1987, the Grand Jury for the Eastern District of California returned a two-count Indictment: Count One against appellant and Hambley for violation of 18 U.S.C. Section 2113(a) and (d), armed robbery, and Count Two against Hambley for violation of 18 U.S.C. Section 3, accessory after the fact.

On February 4, 1988, appellant entered a conditional plea of guilty to Count One.[1] Hambley was tried as the driver of the get-away vehicle, but the jury failed to reach a verdict. Upon the filing of a Superseding Information, Hambley pled guilty to misprision of a felony in violation of 18 U.S.C. Section 4.

A Pre–Sentence Report calculated appellant's total offense level at twenty-two (22),[2] including two (2) points for his leadership role in the offense. The report concluded that,

> [s]ince there is strong evidence the defendant was in the process of recruiting a getaway driver prior to the robbery and two people are known to have been recruited, coupled with the fact that the defendant's and co-defendant's statement indicate the co-defendant was not aware of the robbery until after it occurred, it would appear the defendant had an aggravating role in the offense. Even if one believes that co-defendant was tricked into being the getaway driver, the mere act of trickery to cause the co-defendant to become a participant in the crime would appear to strongly forward the proposition the defendant played a leadership role. Pursuant to Section 3B1.1(c), two levels are added.

Pursuant to local rule, defendant's counsel filed a "Motion to Correct Pre–Sentence Report and Statement of Formal Objections

Thereto," specifically asking the trial court to eliminate the two-level upward adjustment imposed pursuant to Section 3B1.1 on the ground that Anderson was the sole participant.

The Government's response assumed for purposes of appellant's motion that Hambley had no knowledge he was accompanying appellant for the purpose of committing a bank robbery.

Appellant's motion to correct the Pre–Sentence Report was denied after hearing on April 27, 1988. The trial court's decision assumed that the co-defendant was not criminally responsible for the crime of robbery. No evidence was taken and sentencing was based solely on the undisputed facts of the Pre–Sentence Report. Appellant was sentenced to serve forty-six months incarceration under offense level twenty-two, a period of supervised release for three years with an order of restitution among other conditions, and the statutory assessment.

This is the second appeal in this action. On the first appeal, Ninth Circuit No. 88–367, the matter was reversed and remanded on the Court's own motion in light of *Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988). On January 18, 1989, before appellant's resentencing, the United States Supreme Court upheld the constitutionality of the Sentencing Guidelines. *Mistretta v. United States*, 488 U.S. 647, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Accordingly, on January 27, 1989, the District Court resentenced appellant to the same sentence (except that it struck the $50.00 penalty assessment based on *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir. 1988), *cert. granted*, —— U.S. ——, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989)).

---

**1.** Appellant conditioned his plea on imposition of a sentence not in excess of thirty-three (33) months, the lowest sentence under offense level twenty (20) with a criminal history category of I. At oral argument, appellant's counsel confirmed that Anderson elected not to withdraw his plea and has waived his right to do so pursuant to the conditional plea agreement.

**2.** The total offense level was calculated as follows: Base offense level of eighteen (18), pursuant to Section 2B3.1(a) of the guidelines; an additional four (4) points under Section 2B3.1(b) for specific offense characteristics; two (2) points for appellant's leadership role in the offense, pursuant to Section 3B1.1(c); minus a two (2) point reduction for acceptance of responsibility, Section 3E1.1(a).

## II.

### STANDARD OF REVIEW

Appellant seeks a ruling that his sentence was imposed as a result of an incorrect application of the Sentencing Guidelines. *See* 18 U.S.C. § 3742(a)(2). This Court "shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

The "due deference" language added to Section 3742 on November 18, 1988 does not create a new standard of review. It does require the Court to determine what degree of factual inquiry is involved, and to apply the corresponding standard. *United States v. Mejia–Orosco*, 868 F.2d 807, 809 (5th Cir.1989). If the inquiry is a purely factual one, the "clearly erroneous" standard applies. *United States v. Sanchez–Lopez*, 879 F.2d 541, 557 (9th Cir. 1989); *United States v. Wills*, 881 F.2d 823, 825 (9th Cir.1989). As the inquiry becomes more of a purely legal question, the *"de novo"* standard applies. *See Mejia–Orosco* at 809; *see also United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir. 1989) (reviewing *de novo* an application of the Sentencing Guidelines). Accordingly, this Court reviews the district court's application of the Sentencing Guidelines *de novo* in this case, because no factual inquiry is involved.

## III.

### DISCUSSION

The District Court determined that pursuant to Section 3B1.1(c) appellant's "role in the offense" required a two-level increase in his total offense level.

Section 3B1.1 provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager ... and the criminal activity involved five or more participants, or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

Appellant contends that his role in the bank robbery was inaccurately classified as that of a leader because Hambley was not aware of his participation in the offense until after its commission.

Specifically, appellant relies upon the Introductory Commentary to Section 3B1.1 which reads:

This Part provides adjustments to the offense level based upon the role the defendant played in committing the offense. When an offense is committed by more than one participant, Section 3B1.1 or Section 3B1.2 (or neither) may apply.

Although absent from subsection (c), the term "participant" appears in Section 3B1.1 subsections (a) and (b) and in the Introductory Commentary. Appellant argues that the absence of the term "participant" from subsection (c) was simply an oversight, and that all of the subdivisions of Section 3B1.1 require the presence of one or more participants in the criminal activity before the two-level upward adjustment can apply.

Appellant points to the definition of "participant" in paragraph 1 of the Commentary following Section 3B1.1:

A "participant" is a person who is criminally responsible for the commission of the offense but need not have been convicted.

Thus, Commentary both before and after the guideline refers to a "participant" but subsection (c) omits the term. Hambley was not criminally responsible for the robbery because he neither had the knowledge nor the intent to commit an illegal act. Hambley was simply tricked into driving the get-away vehicle. Therefore, Hambley was not a "participant" under the guideline definition.

The Government urges the Court to adopt a literal construction of subsection (c) without the requirement of "participants" as defined by the Commentary. It argues

that the term "participant" was intentionally omitted from subsection (c), which was designed as a catch-all provision for those circumstances where defendant supervised a criminal enterprise not contemplated by subsection (a) and (b). The four- and three-level increases allotted in subsections (a) and (b), respectively, compared with the two-level increase assigned to subsection (c) support this argument. Comparatively, argues the Government, the first two subsections require a larger criminal enterprise and more significant involvement on the part of the defendant than subsection (c), which accounts for defendants who organize or supervise less extensive criminal activity.

The construction propounded by the Government is in accordance with the basic principles of statutory construction as set forth in *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983). The Court held that " 'where Congress includes a particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion and exclusion.' " *Id.* at 23, 104 S.Ct. at 300 (quoting *U.S. v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)); *see also Arizona Elec. Power v. United States*, 816 F.2d 1366, 1377 (9th Cir.1987). The reasoning in *Russello* is persuasive in this case, where the Court is analyzing subparagraphs within the same section.

The significance of the Guideline's Commentary should be noted. Section 1B1.7 provides:

> The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. *See* 18 U.S.C. § 3742. Second, the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines. Such commentary is to be treated as the legal equivalent of a policy statement. Finally, the commentary may provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline. As with a policy statement, such commentary may provide guidance in assessing the reasonableness of any departure from the guidelines.

The Commentary which precedes the foregoing explains that "courts likely will look to the commentary for guidance as an indication of the intent of those who wrote them. In such instances, the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter." The parties have drawn a parallel between interpreting a congressional enactment and interpreting the Sentencing Commission's Guidelines. We agree that the same principles may properly be invoked. Here, however, we find little assistance in Section 3B1.1's commentary.[3]

Section 3B1.1(c) stands without reference to commentary. Where resolution of a question of federal law turns on a statute and the intention of Congress, the courts look first to the statutory language and then to the legislative history *if* the statutory language is unclear. *See Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984). As the Court in *Russello* aptly stated, "[w]e refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship." *Russello*, 464 U.S. at 23, 104 S.Ct. at 300. There is

---

**3.** The application note discussing "otherwise extensive" does show that "all persons involved during the course of the entire offense are to be considered." The acts of those who are duped—"unknowing services of many outsiders"—may be considered even if only three participants are involved in a fraud.

Thus, even subsections (a) and (b) do not require any number of stated "participants" where enhancement is based on otherwise extensive criminal activity. If involving dupes can be the basis for added offense levels in (a) and (b), there is no reason to exclude consideration of involving such a person under (c).

no need to conclude that the Sentencing Commission overlooked "participant" in drafting subsection (c).

The simplest answer is that guideline commentary is not a substitute for the provisions themselves. As stated in *Restrepo*, at 1296, "we construe the terms in the Sentencing Guidelines using their plain meaning." Under that directive, appellant was a "leader." (This term, along with numerous others, is not defined in the Guidelines.)

The Supreme Court has cautioned that the literal reading of a statute should not be employed when it would lead to an absurd result or thwart the obvious purpose of the statute. *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978). Appellant contends that failure to incorporate the "participant" requirement into subsection (c) could lead to results clearly unintended by the Commission. If a defendant, for example, takes a hostage to help effect an escape, the hostage would be under the supervision of a defendant who would thereby become eligible for a two-level increase under subsection (c). We suggest he might more likely be eligible for separate prosecution for the offense of kidnapping, which would adequately account for such conduct. *Sentencing Guidelines Manual*, Section 2A4.1. We may assert, without undue confidence, that sentencing judges will be able to discern a victim from one duped into criminal activity.

Seemingly, it is the construction urged by appellant which would lead to undesirable results. Defendant, by recruiting Hambley as the get-away driver for the bank robbery, escalated the risk of additional undesirable consequences. To disregard appellant's role in involving a second person to assist in the crime's effectuation is to deny the purposes of sentencing: deterring crime, incapacitating the offender, and providing just punishment, *inter alia*, 18 U.S.C. § 3553(a).

## IV.

## CONCLUSION

■ The co-defendant's lack of knowledge of appellant's act of robbery should be of no significance to a determination that appellant was a leader under Section 3B1.1(c). The intent and conduct of *appellant* must be the object of scrutiny. Appellant duped Hambley into assisting his robbery of the Security Pacific Bank. Appellant gave Hambley specific instructions and planned their conduct throughout the course of the enterprise. Appellant's leadership role in this bank robbery is a proper consideration in sentencing pursuant to Section 3B1.1.

The Judgment of the District Court is affirmed.

KOZINSKI, Circuit Judge, dissenting:

The majority makes a fundamental analytical error by treating the Commentary to the Sentencing Guidelines as a secondary aid to interpretation, akin to legislative history, rather than as an integral part of the Guidelines themselves. The difference is outcome-determinative in this case, as it probably will be in many other cases. I fear that the majority opinion takes this circuit down the wrong track, a track different from that taken by the other circuits that have considered the issue.

### I

The majority reads Sentencing Guidelines § 3B1.1(c) as calling for a two-step increase in offense level for Anderson's role as an "organizer, leader, manager, or supervisor" in a "criminal activity," where the only person over whom he had any control was duped and therefore lacked criminal responsibility. The majority acknowledges that this reading is at odds with the Introductory Commentary to section 3B1.1, which limits the application of that section to offenses committed by more than one "participant." Majority op at 644. "Participant" is itself defined in the Application Notes to that section as one who is "criminally responsible for the commission of the offense." The district court assumed that Hambley was not criminally responsible here; under the Commentary

definition of the term, therefore, there was only one "participant" in the bank robbery—Anderson—and section 3B1.1 does not apply.

The majority's interpretation is also in conflict with the Background Commentary to section 3B1.1. There the Sentencing Commission explains the purpose of that section:

> This section provides a range of adjustments to increase the offense level based upon the size of a *criminal organization* (*i.e.,* the number of *participants* in the offense) and the degree to which the defendant was responsible for committing the offense.

(emphasis added). The Background Commentary further explains that section 3B1.-1(c) is intended for cases involving "relatively small *criminal enterprises*" (emphasis added). Thus, it is clear that section 3B1.1 increases the punishment of those who hold controlling positions in criminal organizations or enterprises, that is, activities involving more than one criminal. Anderson's role in the bank robbery simply does not match this description.

A fair reading of the Guidelines together with its attendant Commentary leads to only one conclusion: Anderson should not have been given a two-step increase under section 3B1.1(c).

## II

There are few among the federal judiciary more skeptical than I about the uses and abuses of legislative history. See, for example, *Wallace v. Christensen,* 802 F.2d 1539, 1559–60 (9th Cir 1986) (Kozinski concurring in the judgment); *In re Kelly,* 841 F.2d 908, 912 n. 3, 914 n. 6 (9th Cir.1988). Such history is rarely written by the same people who wrote the legislation; it is seldom, if ever, even seen by most of the legislators at the time they cast their votes. See *Hirschey v. F.E.R.C.,* 777 F.2d 1, 7–8 & n. 1 (D.C.Cir.1985) (Scalia concurring). Much legislative history—committee reports and floor debate—is intended to serve political rather than legislative purposes. It frequently reflects the views of only a minority of the legislature; it is often

planted, to assuage a certain constituency, or worse, to influence court decisions. See *United States v. Taylor,* 487 U.S. 326, 108 S.Ct. 2413, 2423–24, 101 L.Ed.2d 297 (1988) (Scalia concurring in part). In short, courts are wise to be very sparing in their reliance on legislative history, particularly when statutory language is clear. See generally Office of Legal Policy, *Using and Misusing Legislative History: A Re-Evaluation of the Status of Legislative History in Statutory Interpretation* (U.S. Dept. of Justice, 1989).

But the Sentencing Commission's Commentary to the Sentencing Guidelines is not cut from the same cloth as ordinary legislative history. In the first place, the Commentary is written by the same Commission by means of the same processes as the Guidelines themselves. The Commentary was part of the original Guidelines package when it was presented to Congress; it forms part of the amendments that the Commission presents to Congress on a continuing basis. See Pub.L. No. 98–473 § 235, 98 Stat. 2031 (Oct. 12, 1984); 28 U.S.C. § 994(p).

Even a cursory review of the Guidelines Manual reveals that the Commentary is an integral part of the Guidelines package. There is Commentary preceding the Guidelines, following them, and before and after almost every section. It is often impossible to understand the Guidelines without reading the explanatory material contained in the Commentary. The dangers inherent in relying on legislative history simply do not apply here.

In fact, courts are *required* to consider the Commentary. Congress has mandated that "[t]he court, in determining the particular sentence to be imposed, *shall* consider . . . any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2). . . ." 18 U.S.C. § 3553(a) (emphasis added). The Commission, in turn, has explained that the Commentary "is to be treated as the legal equivalent of a policy statement." Guidelines § 1B1.7. It would be reversible error for a district court to refuse to consider Guidelines Commentary when imposing

sentence;[1] surely, the same is true of the court of appeals.

The majority downgrades the Commentary to the status of a secondary interpretive aid, and thereby weakens an important tool the Commission could otherwise use to clarify and fine tune its views. See United States Sentencing Commission, *Guidelines Manual* Appendix C (1989) (amending the Commentary to many sections). This result is particularly troubling because at least two other circuits have come out the other way. The Third Circuit in *United States v. Ofchinick*, 877 F.2d 251, 257 (3d Cir.1989), concluded:

[T]he Sentencing Commission issued both the guidelines and the commentary in its official Guidelines Manual. This is not the usual case in which we are asked to accept legislative history such as committee reports, or even testimony of a witness before a committee, to determine the intent of Congress as a whole.

See also *United States v. Smeathers*, 884 F.2d 363, 364 (8th Cir.1989) ("In the context of the sentencing guidelines, the commentary accompanying each section of the guidelines reflects the intent of the United States Sentencing Commission.").

By taking the contrary approach, the majority creates a conflict with what I believe is the correct view of our sister circuits. This is a serious matter. As this case illustrates, whether the Commentary is treated as an integrated portion of the Guidelines or as a secondary source can affect the outcome of a large number of sentencing issues. It undermines the philosophy of the Guidelines—which call for nationwide uniformity in sentencing—for circuits to take inconsistent positions on this key issue.

### III

The majority has another reason for refusing to read section 3B1.1 in a way consistent with the Commentary: it "would lead to undesirable results." Majority op. at 646. The majority argues that Anderson deserves more punishment because he involved a second person in his crime. By misleading Hambley, Anderson did indeed escalate the dangers he created; the majority may be right that Anderson deserves more punishment. But it is not the purpose of section 3B1.1 to punish such behavior. Criminals who commit crimes against multiple victims also increase the risks involved, and deserve more punishment, but that doesn't justify calling them "leaders" just so we can give them an increased sentence; section 3B1.1 just isn't relevant. Similarly, section 3B1.1 isn't relevant in the present case, where Anderson wasn't leading any criminals.

Unfortunately, the Guidelines do not seem to cover Anderson's situation; there is no explicit provision for an increased sentence as a result of involving additional individuals through trickery where there are no other participants.[2] The district court might therefore have been justified in making an upward departure from the prescribed Guidelines sentence. See Guide-

1. See *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989) ("The Commentary interprets the Guidelines and explains their application. Failure by a trial judge to follow the Commentary may constitute an incorrect application of the Guidelines.") (citations omitted).

2. The majority argues that section 3B1.1(c) does contemplate leadership of those who are duped. The majority points to Application Note 2, which explains that the use of the "unknowing services" of outsiders may be relevant to sentence enhancement. Majority op. at 645 n. 3. But Note 2 refers only to cases where there is an "otherwise extensive" criminal organization, a criterion for enhancement under sections 3B1.-1(a) and (b), but not (c). Nonetheless, the majority concludes that "[i]f involving dupes can

be the basis for added offense levels in (a) and (b), there is no reason to exclude consideration of involving such a person under (c)." Id. Of course there is. Note 2 is concerned with the definition of "otherwise extensive." That phrase does not appear in section 3B1.1(c). As the majority recognizes, under "the basic principles of statutory construction as set forth in *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983)," majority op. at 644, when language is included in one section of a statute and excluded from another the difference is presumed to be intentional. We must therefore conclude that section 3B1.1(c) has nothing to do with otherwise extensive organizations and that Application Note 2 is irrelevant to its interpretation. You can't have it both ways.

lines § 5K2.0. But this is no excuse for relying on an inapplicable provision.

It is, in fact, the majority's reading of section 3B1.1 that may lead to unfortunate results. Anderson is right that under the majority's interpretation, section 3B1.1(c) would apply equally to the taking of hostages. After all, hostages are individuals over whom the criminal has control. Criminals who take hostages surely deserve more punishment, but section 3B1.1 simply is not the appropriate mechanism.

The majority seems to acknowledge that the hostage situation would be covered by its rationale, but dismisses the possibility by suggesting that a sentencing judge will be able to tell the difference between a hostage and one who is duped. Majority op. at 645. But how would the judge be justified in making such a distinction in light of the majority's opinion? Force and fraud are two sides of the same coin; if one who is duped into participation may form part of a criminal enterprise for purposes of section 3B1.1, why shouldn't one who is forced? There is no meaningful distinction. Under a proper reading, those without criminal responsibility are simply not part of a criminal organization or enterprise. Section 3B1.1 does not apply in either situation.

## Conclusion

The Sentencing Guidelines impose an elaborate system of rules on federal judges where previously there was discretion. In working our way through this complex network, the federal courts need all the help they can get. The Sentencing Commission has provided its Commentary as an integral component of the sentencing process. The majority has degraded this crucial source of guidance. I respectfully dissent.