**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mario Minota CARVAJAL,**
**Defendant–Appellant.**

No. 89–10184.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1990.

Decided June 12, 1990.

See also, D.C., 706 F.Supp. 726.

Nancy S. Pemberton, San Francisco, Cal., for defendant-appellant.

Rodolfo M. Orjales, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WALLACE, ALARCON and LEAVY, Circuit Judges.

WALLACE, Circuit Judge:

Following a jury trial, Carvajal was found guilty of distribution of and conspiracy to distribute five kilograms of cocaine in violation of 21 U.S.C. §§ 841 and 846, as well as the unlawful use of the telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b). In calculating Carvajal's sentence, the district court concluded that Carvajal's total offense level should be increased by two points pursuant to section 3B1.1(c) of the Guidelines because Carvajal had a leadership role in the criminal activity. The district court then sentenced him to 188 months of imprisonment, with a five year term of supervised release, a sentence within the guideline range applicable to his total offense level. On appeal, Carvajal contends that the district court's application of section 3B1.1(c) was improper and that therefore the two point increase in his offense level was invalid. The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291. We affirm.

I

Sometime in November of 1987, Carvajal met McDonald, a former criminal cohort, and gave him a sample of cocaine available for sale. At the suggestion of his parole officer, McDonald contacted the Drug Enforcement Administration (DEA) and was subsequently registered as an informant. McDonald was then instructed to arrange a meeting between Carvajal and a DEA undercover agent.

In April of 1988, McDonald introduced Carvajal to a DEA undercover agent. After lengthy negotiations, Carvajal informed the agent that he had cocaine available for sale. He then arranged with the agent to meet both the agent and McDonald at a local restaurant. Carvajal, however, then contacted McDonald and informed him that Reyes–Diaz would deliver the cocaine instead and that McDonald should give the money to Reyes–Diaz. Reyes–Diaz arrived

at the restaurant at the appointed time and delivered five kilograms of cocaine to the DEA agent. Reyes–Diaz was promptly arrested. Carvajal was then arrested outside of Reyes–Diaz's apartment.

A federal grand jury indicted Carvajal for (1) conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, (2) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841, (3) use of a telephone to facilitate distribution of cocaine in violation of 21 U.S.C. § 843(b), and (4) illegal re-entry after deportation in violation of 8 U.S.C. § 1326. At Carvajal's request, the illegal re-entry count was severed from the first three counts for trial.

Carvajal was found guilty of counts one through three. In the presentence report, the probation officer calculated an adjusted base offense level of 32. This figure included a base offense level of 32 with a two point decrease for acceptance of responsibility pursuant to Guidelines section 3E1.-1(a), and a two point increase for Carvajal's role as a leader in the criminal activity pursuant to section 3B1.1(c). Carvajal timely objected to this report, arguing that he should not have been given the two point enhancement for a leadership role. After holding an evidentiary hearing, the district court concluded that Carvajal was in fact the leader of Reyes–Diaz and that the two point increase was warranted. The district court then sentenced Carvajal to 188 months of incarceration—the maximum amount of prison time within the 151 to 188 month Guideline range prescribed for an offense level of 32—to be followed by a five year term of supervised release.

## II

Carvajal raises only one issue on appeal: whether the district court properly increased his base offense level by two points for his leadership role in the cocaine transaction. He advances three contentions in support of his position. In our discussion of his contentions, unless otherwise noted, we will use the 1987 text of the Sentencing Guidelines as amended effective January 15, June 15, and October 15, 1988, because that is the version under which Carvajal was sentenced.

### A.

■ Carvajal first contends that the two point increase was improper because section 3B1.1(c) applies only to ongoing criminal enterprises and not to a single drug transaction as was involved here. Since this question involves the construction and interpretation of the Guidelines, we review the district court's decision de novo. *United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989) (*Restrepo* ).

■ Carvajal points out that a lone participant in a single five-kilogram cocaine transaction is assigned a base offense level of 32. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1. If section 3B1.1 is interpreted to cover single transactions, the base offense level can be increased by four points to 36 pursuant to section 3B1.1(a) if the person "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *Id.* at § 3B1.1(a). Carvajal then states that the base offense level of a person convicted under 21 U.S.C. § 848 for selling the same amount of cocaine as part of a continuing criminal enterprise is also 36. *Id.* at § 2D1.5. Therefore, Carvajal argues, applying section 3B1.1 to single transactions would lead to anomalous and disproportionate sentencing: there would be no difference in sentencing between an individual who directed an ongoing enterprise engaged in drug transactions and an individual who directed a single drug transaction. The Sentencing Commission, he concludes, could not have intended such a result, and thus section 3B1.1 cannot be read to cover a leadership role in a single transaction.

While this argument is certainly inventive, it fails for three reasons. First, the language of section 3B1.1(c) nowhere indicates that it applies only to ongoing criminal enterprises. To the contrary, *section 3B1.1(c)* specifically states that "[i]f the defendant was an organizer, leader, manager, or supervisor in *any criminal activi-*

*ty* other than [an activity that involved five or more participants], increase by 2 levels." *Id.* at § 3B1.1(c) (emphasis added). In addition, section 3B1.1 provides for an increase "[b]ased on the defendant's role in *the offense*." The use of these singular constructions—"any criminal activity" and "the offense"—cannot sensibly be read to mean that section 3B1.1 only applies to a defendant's role in an ongoing criminal enterprise as Carvajal suggests. Since the language of section 3B1.1 clearly indicates that the section applies to single transactions, it is not our role to second guess the Sentencing Commission's rationale for assigning the same offense level to a leader in an ongoing criminal enterprise and a leader in a single transaction.

Another strike against Carvajal's argument is that we recently upheld a two point increase for a defendant's leadership role in an offense involving a single criminal activity. *See United States v. Anderson*, 895 F.2d 641 (9th Cir.1990) (*Anderson* ) (defendant was convicted of single armed robbery violation); *accord United States v. Clark*, 889 F.2d 1056, 1057 (11th Cir.1989) (*Clark* ). Not surprisingly, neither *Anderson* nor *Clark* addressed the same argument that Carvajal makes here. Nevertheless, the fact that they were not troubled by the application of section 3B1.1 to a single transaction suggests that our reading of section 3B1.1 is accurate.

Finally, in the 1989 amendments to the Guidelines, the base offense level for participation in a continuing criminal enterprise was increased to 38. U.S.S.G. § 2D1.5 (Nov.1989). Thus, while it might be argued that the Sentencing Commission itself noticed the tension cited by Carvajal, instead of rewriting the definition of section 3B1.1 as Carvajal request us to do, it chose to increase the offense level for a continuing criminal enterprise. We therefore reject Carvajal's argument and hold that section 3B1.1 is properly applied to a single criminal transaction.

### B.

■ Although his brief is not particularly clear, it appears that Carvajal also con-

tends that section 3B1.1(c) does not apply to a transaction with only two participants. Since this argument also involves the construction and interpretation of the Guidelines, our review is de novo. *Restrepo*, 884 F.2d at 1295.

■ Carvajal's argument is entirely without merit. The introductory commentary to the Guidelines's section on adjustment for a defendant's role in the offense explicitly states: "When an offense is committed by more than one participant, § 3B1.1 ... may apply." U.S.S.G. Ch. 3, Pt. B, intro. comment. (Oct.1987). A participant is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.* at § 3B1.1, comment. (n. 1). Carvajal makes no argument that he and Reyes–Diaz were not "participants" in the cocaine transaction. Since there was "more than one participant," section 3B1.1 was properly applied to Carvajal.

Our interpretation of section 3B1.1 is also dictated by our recent holding in *Anderson.* In *Anderson,* we upheld the district court's imposition of a two point increase pursuant to section 3B1.1(c) on a defendant who had been the leader in a single bank robbery, involving only one other person who was not a "participant" because he had been duped into committing the crime. *Anderson,* 895 F.2d at 644–46. If the application of section 3B1.1(c) was proper in *Anderson* where only two individuals were involved in the crime and the non-leader was not a participant, it is clearly even more appropriate here where both Carvajal and Reyes–Diaz were participants. We therefore reject Carvajal's argument and hold that section 3B1.1(c) is applicable to crimes with only two participants.

### C.

■ Anticipating our conclusion that section 3B1.1 applies to this type of transaction, Carvajal disputes the district court's conclusion that he was the leader and organizer of the cocaine transaction. We review this essentially factual determination for clear error. *United States v. Wills,*

**1296**

881 F.2d 823, 825 (9th Cir.1989); *see United States v. Sanchez–Lopez*, 879 F.2d 541, 557 (9th Cir.1989); *accord Clark*, 889 F.2d at 1057.

■ The basic facts of this case belie Carvajal's contention that he was not the leader. Carvajal instituted the cocaine transaction with the DEA undercover agent and arranged for the sale to take place at the restaurant. Carvajal then contacted McDonald, informed him that Reyes–Diaz would deliver the cocaine, and directed McDonald to give the money to Reyes–Diaz. Finally, Carvajal waited at Reyes–Diaz's apartment for Reyes–Diaz to arrive with the money. In view of Carvajal's overall control of this drug transaction, we cannot conclude that the district court's finding that Carvajal was the leader was clearly erroneous.

■ Carvajal, however, persists in his contention that the district court's finding was in error. He finds fault with the district court's statement that Carvajal's decision not to deliver the cocaine "is typical of leaders. They don't want to be right there up front if something goes wrong." Carvajal argues that by concluding Carvajal's behavior was "typical" of a leader, the district court improperly relied on a fact not in evidence—namely, the typical behavior of a leader in a drug transaction.

Carvajal, however, failed to object to this statement in the district court. Thus, we review the propriety of the district court's finding that Carvajal's behavior was typical of a leader in a drug transaction under the plain error standard. *See United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir.) (*Hernandez*), *cert. denied*, — U.S. —, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). " 'Plain error is a highly prejudicial error affecting substantial rights.' " *Id., quoting United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986) (*Bustillo* ).

■ We have consistently held that "[a] defendant challenging information used in sentencing must show such information is (1) false or unreliable, *and* (2) demonstrably made the basis for the sentence." *United States v. Messer*, 785 F.2d 832, 834

(9th Cir.1986) (emphasis added); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir.) ("[A] sentencing judge has broad discretion to hear a variety of evidence normally inadmissible during trial. . . ."), *cert. denied*, — U.S. —, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989). Carvajal has made no showing whatsoever that the district court's finding that Carvajal's behavior was typical of leaders in drug transactions was either false, unreliable or demonstrably made the basis for his sentence. Thus, far from showing how the district court's finding was a "highly prejudicial error affecting substantial rights," *Hernandez*, 876 F.2d at 777, *quoting Bustillo*, 789 F.2d at 1367, Carvajal has not even shown that the district court's finding was improper. We find no plain error here.

AFFIRMED.