RYMER, Circuit Judge,
dissenting:
I respectfully dissent, because one may “manage” a thing, such as a business or money or a warehouse, as well as a person.
“We construe the terms in the Sentencing Guidelines using their plain meaning.” United States v. Anderson, 895 F.2d 641, 646 (9th Cir.1990) (quoting United States v. Restrepo, 884 F.2d 1294, 1296 (9th Cir.1989). U.S.S.G. § 3Bl.l(c) provides that, based on the defendant’s role in the offense, the offense level should be increased by two levels “[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than [an activity that involved five or more participants].” See Anderson, 895 F.2d at 644; see also United States v. Carvajal, 905 F.2d 1292, 1294-95 (9th Cir.1990).
The Guidelines do not define “manager,” but Webster says that a manager is “one who has the conduct or direction of anything; as, the manager of a railroad; the manager of a lottery.” Webster’s New Universal Unabridged Dictionary (2d Ed.). The Oxford American Dictionary similarly defines manager as “a person who is in charge of the affairs of a business etc.” Random House is to the same effect: to manage is “to have charge of or responsibility for,” or “to handle, direct, govern, or control in action or use”; a manager is a “person who manages: the manager of our track team;" or “a person charged with the control or direction of an institution, business or the like,” or “a person who controls and manipulates resources and expenditures, as of a household.” The Random House College Dictionary (3d ed.).
The majority does not discuss the plain meaning of “manage,” but concludes that Application Note 3 to § 3B1.1 “indicates that some degree of control or organizational authority over others is required in order for section 3B1.1 to apply.” [1] Even if § 3B1.1 were not capable of common sense construction, I disagree that the Note is reasonably susceptible of that view. It does not purport to set forth prerequisites for finding the defendant was a “manag *775 er”;[2] rather, Note 3 concerns the factors a court should consider in distinguishing a leadership and organizational role from one of management or supervision.[3] Even so, it does not speak in terms of what is required for the one or the other. Instead, the Note indicates that the degree to which control or authority is exercised over others is one of several factors which should influence the determination whether a defendant is more like a leader, or more like a manager.[4]
To construe “manager” to include one who controls a business or money (as well as people) is consistent with the structure of the Guidelines. The Introductory Commentary to Part B provides only that “[w]hen an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply.” The level of the defendant’s knowledge of the activities of others is specifically addressed in § 3B1.2, dealing with downward adjustments for a mitigating role.[5] By implication, the level of the defendant’s knowledge of the activities of others is not central to § 3B1.1. Other people are dispositive to the scheme of § 3B1.1 only in that there must necessarily be more than one participant in order for a comparison of roles to be possible. Once that requirement is satisfied (as it is here), it is the defendant’s responsibility for committing the offense that matters. The focus, therefore, should be on what the defendant did, not on the people with whom he did it.
To read § 3Bl.l(c) as the majority does is inconsistent with the Guidelines in that its “control over others” requirement effectively insulates any person who is part of a conspiracy but who by himself runs a stashhouse, no matter how big, or collects the money and keeps the ledgers, no matter how complicated or critical to the enterprise, from an upward adjustment based on his role in the criminal activity. It is hard to believe that the Commission intended such a result.
While the First Circuit has taken the view that control over others is required *776 for a “manager,” United States v. Fuller, 897 F.2d 1217 (1st Cir.1990), others have not. The Sixth Circuit, for example, affirmed a two-level increase under § 3Bl.l(c) on testimony that showed the defendant was a source of cocaine, large quantities were taken from Florida from time to time, substantial income was involved, defendant constructed a $60,000 house without a loan, defendant sold the cocaine on credit, and the activity took place over a long period of time. United States v. Barrett, 890 F.2d 855 (6th Cir. 1989). The Eleventh Circuit upheld a finding that the defendant was a “supervisor” or “organizer” on evidence of his management of a stash house, receipt of cocaine, and distribution of various allotments of cocaine to others. United States v. Carrillo, 888 F.2d 117 (11th Cir.1989). The Fifth Circuit affirmed an upward adjustment on facts showing that the defendant was in charge of $200,000 to be used to purchase marijuana and was found counting it. United States v. Farrell, 893 F.2d 690 (5th Cir.1990).[6]
Although we have not yet squarely dealt with the question, in at least one case, United States v. Avila, 905 F.2d 295 (9th Cir.1990), we affirmed the district court’s finding that the defendant was an “organizer or leader” based on evidence which did not include control over others. The evidence showed only that Avila was considered a heavy drug dealer, negotiated the price during drug deals, indicated he had alternative sources, and exchanged large amounts of illegal substances for large amounts of currency. To affirm a four point enhancement for Avila’s role as an “organizer or leader” on those facts, but reverse a two point enhancement for Mares-Molina as a “manager” solely because there is no evidence that he exercised control over others, is not consistent.[7]
I would therefore hold that a “manager” for purpose of § 3B1.1 may include one whose role in the criminal offense is responsibility for, or control of, a business, money, or operation such as a stashhouse or accounting that is integral to the enterprise.
So interpreted, the district court’s characterization of Mares-Molina as a manager is not clearly erroneous. Mares-Molina was the lessor of a warehouse used by Mares Trucking. He was the signatory on lease agreements for twelve tractor trailers. There was evidence that cocaine was being smuggled into the United States in the tires of large diesel tractor/trailers. At least one delivery of 400 to 600 kilograms of cocaine had been made to Mares Trucking before three trailers, containing 1300 kilograms, were seized in route to that facility. Mares-Molina had spent approximately $60,000 on Mares Trucking in the five months of its existence; there was evidence that a co-conspirator had given or loaned him $8000, was paying the $2000 monthly lease fee, and had obtained opera *777 tional permits for the lease of diesel tractors. The warehouse appeared vacant most of the time, and the lessees were in and out only once or twice a week. A search of the premises also disclosed twenty large truck tires containing cocaine residue. Finally, according to the presentence report, Mares’s “role was to provide a safe location to store the cocaine pending distribution.”
Such a finding is within the area of discretion that the Guidelines leave to the district court. In this case the district judge had heard testimony, knew the nature and scope of the conspiracy, and carefully adopted some facts set forth in the presentence report and rejected others. Based on his greater familiarity with the record, he found that Mares-Molina acted in a managerial capacity. The enhancement based on that finding should be affirmed.

. Opn., supra at 773.

. The complete Application Note provides:
In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as ‘kingpin’ or 'boss' are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

. Section 3Bl.l(a) and (b) require that this distinction be made, as (a) applies only if the defendant was an “organizer or leader” whereas (b) applies only if the defendant was a "manager or supervisor.”

. Nothing in the Note suggests that each factor must be present, nor does the Commentary Background suggest that for one to be a "manager” he or she must have managed others in the commission of the offense. It explains:
This section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense. This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate. The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant’s responsibility.
In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of § 3Bl.l(c).

. See also United States v. Williams, 891 F.2d 921 (D.C.Cir.1989) (remanding on other grounds but not finding district court's reliance on defendant being a “manager” of a "crack house” improper for purposes of applying § 3B 1.1(c); United States v. Pettitt, 903 F.2d 1336 (10th Cir.1990) (remanding on other grounds but expressing no problem with adjustment on evidence that showed only that defendant allowed others to live in the house who used it to conduct the sale of crack); United States v. Otero, 890 F.2d 366 (11th Cir.1989) (§ 3Bl.l(a) enhancement affirmed on grounds that defendant found a seller, set the price of the drug and determined a time and location for the sale); United States v. Pierce, 907 F.2d 56 (8th Cir.1990) (adjustment affirmed on evidence that defendant was main contact person between source and distributors and customers, set the price, and recruited another person into methamphetamine conspiracy). Cf. United States v. Vasquez, 874 F.2d 250 (5th Cir.1989) (increase affirmed where defendant recruited and directed a codefendant, was the main participant in negotiations with undercover officer, and used his apartment as base of operations); United States v. Mejia-Orosco, 867 F.2d 216 (5th Cir.1989), cert. denied, — U.S. -, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1990) (district court finding that defendant was manager, supervisor, organizer or leader affirmed on evidence that relatives of smuggled aliens were involved in the crime, thereby making the enterprise "extensive” within meaning of § 3B1.1).

. In other cases applying § 3B1.1 there has been evidence that the defendant directed or controlled others, however there is no indication that that factor alone was central to their holding. See e.g., United States v. Sanchez, 908 F.2d 1443 (9th Cir.1990); United States v. Carvajal, 905 F.2d 1292 (1990); United States v. Anderson, 895 F.2d 641.