962 F.2d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff/Appellee,
v.
Jerry Lynn DRY, Defendant/Appellant.
 No. 91-30134.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 2, 1992.*
Decided April 23, 1992.
 
 1
 Before EUGENE A. WRIGHT, ALARCON, Circuit Judges, and FONG,** District Judge
 
 
 2
 MEMORANDUM***
 
 BACKGROUND
 
 3
 I. FACTS.
 
 
 4
 The defendant/appellant, Jerry Lynn Dry, and the victim, Marcell Lynn Fisk, were neighbors. At approximately 5:00 p.m., on August 31, 1988, Dry went to Fisk's home, showed her a false arrest warrant and handcuffed her. Fisk resisted, and during the struggle, Dry told her that he would kill her 14 month old daughter if she didn't cooperate. Dry ultimately dragged Fisk across the yard and into his car. He then directed his wife to go into Fisk's house and get the baby. Mrs. Dry did so and the baby, along with a diaper bag were placed in the car. This struggle and abduction was witnessed by several people.
 
 
 5
 Dry drove south from Washington into Oregon. When Fisk asked why Dry was doing this, he said "because of money." Fisk was apparently handcuffed in the front, but was allowed to hold her child. She continued to struggle throughout the trip and Dry repeatedly struck both Fisk and the child to keep them under control. Dry also continued to threaten to kill the baby if Fisk did not stop struggling.
 
 
 6
 Approximately 1 1/2 hours later, a truck driver called the Oregon State Patrol, identified Dry's car and reported that he had observed a woman who appeared to be tied up, with an infant in her lap, fighting with a male driver. Shortly thereafter, an Oregon State Patrol Officer spotted the car. The woman passenger was in the front seat with her face against the side window, her hands were bound, her face was streaked with tears, and she was screaming for help. As the trooper's car approached, she rolled down the window and pushed her arms outside so that the trooper could see she was handcuffed. When the trooper pulled the car over, Fisk immediately jumped out with the baby in her arms and ran to the trooper yelling "get me away from him ... don't let him get me."
 
 
 7
 As the trooper approached, Dry handed him the false San Francisco County arrest warrant and told him that he had lawfully arrested Fisk. Dry stated that he was taking Fisk to San Francisco for $2,000 in bond money. The trooper frisked Dry and retrieved from his boot, a squirt gun, which resembled a real gun. The trooper also retrieved an operable rifle from the back of Dry's car. The San Francisco authorities and Dry's wife confirmed to the Oregon State Patrol that the warrant was a forgery.
 
 
 8
 Fisk and her baby were taken to a hospital where they were treated for injuries. At the hospital, FBI Agents Ron Stankye and Douglas Sanders interviewed her. These agents observed severe bruises on Fisk's wrists, arms and face as well as bruises on the baby's back and chin, all of which, Fisk claimed, were the result of being struck by Dry. Fisk believes that Dry intended to murder her and return home with the baby, whom Dry's wife apparently adored.
 
 
 9
 II. PROCEDURAL HISTORY.
 
 
 10
 Dry was charged in a two count indictment with kidnapping Marcelle Lynn Fisk and her daughter, Robin Nichole Fisk.
 
 
 11
 On November 16, 1988, Dry pled guilty to both counts pursuant to a plea agreement. The district court, however, rejected this plea agreement because it placed a "lid" on the sentence. Dry subsequently entered into a new plea agreement on March 3, 1989, this time pleading guilty only to Count I. Sentencing was set for March 17, 1989.
 
 
 12
 Prior to sentencing, a Presentence Investigation Report ("PSI") recommended a final guideline level of 34, which calls for the range of 188 to 235 months of incarceration. The court departed upward from the guidelines and sentenced Dry to 376 months on his plea of guilty to kidnapping Marcelle Fisk and transporting her from Washington to Oregon in violation of 18 U.S.C. § 1201(a)(1).
 
 
 13
 This sentence was appealed and on August 21, 1990, this court vacated the sentence and remanded for resentencing. This court essentially found that it was improper for the district court to have adopted the PSI without responding to the defense objections.
 
 
 14
 At resentencing, the district court held an evidentiary hearing and again departed from the guidelines. This time the district court sentenced Dry to 293 months. He now appeals several of the grounds upon which the sentencing judge relied for adjusting his offense level and for departing from the guideline range.
 
 STANDARD OF REVIEW
 
 15
 The method of calculating a guideline sentence is reviewed de novo. United States v. Garren, 893 F.2d 208, 211 (9th Cir.1989). However, where a sentencing inquiry is factually based, the trial court's findings of fact are to be reviewed under the "clearly erroneous" standard. United States v. Anderson, 895 F.2d 641, 644 (9th Cir.1990). This court must "determine what degree of factual inquiry is involved and ... apply the corresponding standard." Id. See United States v. McConney, 728 F.2d 1195, 1199-1204 (9th Cir.1984) (en banc), cert. denied 469 U.S. 824 (1984) (instructing how the appellate court is to determine which standard of review should be applied when reviewing mixed questions of fact and law).
 
 DISCUSSION
 
 16
 Dry appeals two general categories of findings made by the district court: (1) findings regarding adjustments to the base offense score; and (2) findings relating to the district court's decision to depart from the guideline range.
 
 
 17
 I. ADJUSTED OFFENSE LEVEL.
 
 
 18
 It is not disputed that Dry's base offense level under § 2A4.1 of the Sentencing Guidelines is 24. The sentencing judge, however, elected to make two upward adjustments which Dry now appeals: a two level increase because the offense involved a "vulnerable victim," and a two level increase because the victim was "physically restrained." In addition, Dry appeals the decision of the trial judge not to invoke the following two downward adjustments: a one level decrease for releasing the victim within 24 hours and a two level reduction for accepting responsibility for the criminal conduct.
 
 
 19
 A. Upward Adjustment for "Vulnerable Victim" under § 3A1.1.
 
 
 20
 The sentencing judge found that Fisk, the mother of a small child, qualified as a "vulnerable victim" within the meaning of § 3A1.1 of the Guidelines Manual. Accordingly, he increased the base offense level by two points.
 
 
 21
 Dry argues that Fisk was not a "vulnerable victim" because she was a "healthy, mentally sound, 19 year old." However, this argument does not address the substance of the trial court's finding, which was based on the fact that Ms. Fisk was the mother of a small child who was present during the abduction and during the car trip from Washington to Oregon. The district court's factual findings with respect to Dry's actions and the presence of the child are supported by the record and not clearly erroneous.
 
 
 22
 The next question, however, whether these facts rendered Fisk a "vulnerable victim" within the meaning of the statute, is a mixed question of fact and law. In United States v. McConney, 728 F.2d 1195, 1199-1204 (9th Cir.1984) (en banc), cert. denied 469 U.S. 824 (1984), this court held that the appellate court must utilize a functional analysis in determining which standard of review is to be applied to such mixed questions. Here, because a holding in this scenario would establish a rule of law with respect to whether mothers of young children may be considered "vulnerable victims" in kidnapping cases, the de novo standard of review is appropriate.
 
 
 23
 Given the facts of this case, the district court was correct in concluding that Fisk's status as a mother of a small child (who was present during the commission of the crime) rendered her a "vulnerable victim." Threats of harm to the child constituted a continuing reminder to the victim that the welfare of her child was an additional factor for her to consider in formulating her conduct during the kidnap flight. The presence of the child rendered the victim more vulnerable than if she were concerned only about her own welfare. Accordingly, the district court appropriately applied a two level increase to the base offense level under § 3A1.1 of the Guidelines Manual.
 
 
 24
 B. Upward Adjustment for "Restraint of Victim" under § 3A1.3.
 
 
 25
 The district court also applied a two point upward adjustment under § 3A1.3 which allows such an adjustment "[i]f a victim was physically restrained in the course of the offense."
 
 
 26
 Dry argues that such an adjustment is improper in this case because "physical restraint" is an element of the offense charged (kidnapping), and is therefore already factored into the base offense level. This is a question of law to be reviewed de novo.
 
 
 27
 Although not explicitly set forth in the 1987 version of the guidelines manual utilized by the trial court in this case, the Sentencing Commission has recently clarified the application of § 3A1.3 by commentary set forth in the November 1991 edition:
 
 
 28
 Do not apply this adjustment where the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint)).
 
 
 29
 U.S.S.G. § 3A1.3, comment. (n. 2) (Nov. 1991).
 
 
 30
 Because this commentary demonstrates that the Sentencing Commission assumed restraint of the victim to be an essential element of the crime of kidnapping, it was a mistake of law for the district court to have applied the § 3A1.3 adjustment to this case.
 
 
 31
 C. Downward Adjustment for "Release of Victim" under § 2A4.1.
 
 
 32
 Dry argues that he was entitled to a one level downward adjustment under § 2A4.1(b)(4)(C) because Fisk was under Dry's confinement for less than twenty four hours before Dry's car was pulled over by the Oregon state trooper. In the comments, the Commission notes that "[f]or the purpose of subsection (b)(4)(C), 'released' includes allowing the victim to escape or turning him over to law enforcement authorities without resistance." U.S.S.G. § 2A4.1, comment. (n. 3).
 
 
 33
 Although the issue was presented at the hearing, the district court did not make an express finding as to the applicability of this section. This court finds, however, that, in light of the record as a whole, the trial court's silence indicated a purposeful decision not to apply this section rather than an omission to consider it.
 
 
 34
 Indeed, there is ample evidence to support this holding. The desperate actions of the victim in seeking to communicate her plight to the approaching police vehicle would militate against any suggestion that Dry was about to release her. Furthermore, when Dry was pulled over, he did not turn the victim over without resistance but, in fact, tried to retain custody over her by showing the officer the fraudulent arrest warrant. Accordingly, if it can be assumed that the district court adopted this evidence as fact, Dry's conduct clearly does not to fall within the meaning of § 2A4.1(b)(4)(C). See, e.g., United States v. White, 903 F.2d 457, 464-65 (7th Cir.1990) (finding that failing to search for the victim after she escaped the kidnapper's automobile was not the equivalent of allowing her to escape).
 
 
 35
 D. Downward Adjustment for "Acceptance of Responsibility" under § 3E1.1.
 
 
 36
 Section 3E1.1 states "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." Appellant argues that he was entitled to this adjustment and that the trial court erred in failing to apply this section.
 
 
 37
 This section requires that the "defendant clearly demonstrate[ ] a recognition and affirmative acceptance of personal responsibility." U.S.S.G. § 3E1.1 (emphasis added). Here, there is no indication in the record of any such demonstration. In fact, Dry elected to remain silent.
 
 
 38
 The only evidence that Dry may have accepted any responsibility for his conduct is the plea of guilty itself. However, § 3E1.1(c) explicitly notes that "a defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right."
 
 
 39
 Accordingly, the absence of any demonstrable evidence of Dry's acceptance of responsibility (other than a guilty plea) supports the district court's refusal to accord him a two level reduction under § 3E1.1.
 
 
 40
 II. GROUNDS FOR DEPARTURE FROM GUIDELINE RANGE.
 
 
 41
 The district court elected to depart from the Guidelines on the following bases: (1) a two point increase under § 5K2.2 for physical injury to mother and child; (2) a one point increase under § 5K2.3 for extreme psychological injury to the child; (3) a one point increase under § 5K2.6 for possession of weapons during the crime; and (4) a two point increase for an amalgam of three issues primarily related to Dry's abduction of the child; § 5K2.4 (abduction to facilitate commission of the crime), § 5K2.8 (extreme conduct), and § 1B1.3 (risk to others). Dry challenges each of these bases for departure.
 
 
 42
 18 U.S.C. § 3553(b) authorizes a trial court to depart from the guideline range under certain circumstances. Under this section the sentencing court may impose a sentence outside the range established by the applicable guideline if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."
 
 
 43
 This court has set forth a three-step analysis to be utilized in reviewing the appropriateness of a departure made under this section. First, it must be determined that the trial court has identified an aggravating or mitigating factor of a kind or degree not adequately considered by the sentencing commission in setting the guideline range. Second, there must be facts in the record to support the court's findings. Finally, the extent of the departure must be "reasonable." United States v. Lira-Barraza, 941 F.2d 745 (9th Cir.1991) (en banc).
 
 
 44
 A. Upward Departure based on Physical Injury under § 5K2.2.
 
 
 45
 The guidelines set forth for the offense of kidnapping provide for a two level increase if the victim sustained serious bodily injury. U.S.S.G. § 2A4.1(b)(2)(B). In this case, the court found that the injuries suffered by the victims did not rise to the level of "serious bodily injury." Nonetheless, the court held that it could depart under the general departure provision for "significant physical injury" set forth in § 5K2.2.
 
 Specifically, the court stated:
 
 46
 This court has reviewed photographs of both victims which show various bruises and abrasions inflicted by Dry during the course of the kidnapping. While the injuries may not constitute "serious bodily injuries" under [§ 2A4.1(b)(2)(B) ], the Court is taking into account that bodily injury did occur, and there is a two-point level enhancement under that section.
 
 
 47
 Dry first objects to the court's reliance on photographs which were never introduced into evidence. When this fact was called to the court's attention, however, it responded "[t]he photographs were available to law enforcement officials." This indicates that the trial court had intended to adopt the findings of the PSI which, themselves, were based on the photographs, and to correct its previous statement that the court, itself, was relying on the photographs. The trial court, therefore, properly relied on the PSI, which included a review of the photographs, and did not base its decision on improper evidence.
 
 
 48
 Dry's second objection is that the magnitude of the departure was not proportionate to the severity of the injuries. The rationale is that if a "serious bodily injury" results in a two level increase under § 2A4.1(b)(2)(B), a less significant injury should warrant a departure of less than two levels. This argument would be persuasive if the injuries had occurred to only one victim. However, the two point departure was to account for injuries which Dry inflicted on both Fisk and on her child. Because injury to more than one victim was not contemplated within the § 2A4.1(b)(2)(B) adjustment, it is not unreasonable for the trial court to have employed a two level departure under § 5K2.2 on grounds that less than "serious" bodily injury was inflicted on two victims. Cf. U.S.S.G. § 5K2.0 (Nov. 1991) ("[P]hysical injury would not warrant departure from the guidelines when the robbery offense guideline is applicable because the robbery guideline includes a specific adjustment based on the extent of any injury. However, because the robbery guideline does not deal with injury to more than one victim, departure would be warranted if several persons were injured.").
 
 
 49
 B. Upward Departure based on Extreme Psychological Injury under § 5K2.3.
 
 
 50
 Dry next challenges the trial court's decision to depart by one level under § 5K2.3 on the ground that the child had suffered "extreme psychological injury." In support of this decision was a statement of the mother quoted in the PSI that her daughter was "extremely fearful of any stranger and cried excessively whenever strangers got close." This court finds this sufficient to sustain the trial court's one level departure under § 5K2.3.
 
 
 51
 C. Upward Departure based on Possession of Weapons under § 5K2.6.
 
 
 52
 Under § 2A4.1(b)(3), the base offense level for kidnapping is to be increased by two levels "[i]f a dangerous weapon was used." In this case, the court did not find that a dangerous weapon was used within the meaning of this section, but nonetheless decided to depart by one level under § 5K2.6 which allows an analogous departure "[i]f a weapon or dangerous instrumentality was used or possessed in the commission of the offense."
 
 
 53
 The defense argues that this section is not available in kidnapping offenses since use of a weapon is a specific offense characteristic of the crime. However, in United States v. Carpenter, 914 F.2d 1131 (9th Cir.1990), this court held that a specific offense characteristic for "use of a weapon" did not bar a smaller departure under § 5K2.6 for possession of a weapon during the offense.
 
 
 54
 The trial court based its departure on the fact that Dry had a squirt gun, which was an exact replica of a real weapon in his boot and had an operable rifle in the trunk of his car during the commission of the crime. The fact that Dry had an operable gun in the trunk satisfies the requirement of possession of a weapon during the offense as required under § 5K2.6. Cf. United States v. Heldberg, 907 F.2d 91 (9th Cir.1990) (presence of unloaded firearm, locked in a briefcase in the trunk of a car, was sufficient to justify two level adjustment under U.S.S.G. § 2D1.1(b)(1) (1989) for possession of a dangerous weapon during importation of controlled substances).
 
 
 55
 D. Upward Departure based on §§ 5K2.4, 5K2.8, and 1B1.3 (comment, n. 4).
 
 
 56
 The district court elected to make a two level departure based on a combination of three grounds, all related to Dry's abduction of the infant. Section 5K2.4 allows an upward departure "[i]f a person was abducted ... to facilitate the commission of the offense." The court elected to depart under this section because the child was abducted in the course of the kidnapping of the mother. Dry does not appeal this finding which is adequately supported by the record.
 
 
 57
 Section 5K2.8 allows a departure "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim." The court found this section applicable because the kidnapping involved the 14-month-old baby in addition to the mother. The court further noted that Dry "threatened to kill the baby, should the victim not cooperate, and throughout the short duration of the kidnapping [Dry] physically struck both the mother and the baby."
 
 
 58
 Dry argues that his behavior did not rise to the level of being "unusually heinous, cruel, brutal, or degrading to the victim" as required under the guidelines. This is essentially a factual determination and the district court's decision will, therefore, be reviewed under the clearly erroneous standard. The trial court has made a finding that Dry's conduct rose to the level of being "extreme" under this guideline. This finding is adequately supported by the facts in the record and is, therefore, not "clearly erroneous."
 
 
 59
 Finally, note 4 to § 1B1.3 provides "[w]hen not adequately taken into account by the applicable offense guideline, creation of a risk may provide a ground for imposing a sentence above the applicable guideline range." In this case, the trial court adopted the facts set forth in the PSI finding that Dry had created a risk of injury to both victims and the public in general.... He was driving down an interstate highway beating on the victims.
 
 
 60
 The 19-year-old victim was frantically attempting to enlist aid from the passing motorists, and, in fact, it was passing motorists that reported the subject's extreme conduct....
 
 
 61
 The probability that the defendant's overall behavior could have resulted in extreme harm to both victims and/or the public in general is great.
 
 
 62
 Dry contests this finding arguing that the evidence in the record does not support a finding that he created such a risk. Again, however, this is an intensely fact-based inquiry, and, as a result, the district court's decision is evaluated under the clearly erroneous standard. Given the facts in the record, the court finds that it was not clearly erroneous for the district court to have found that Dry had created a risk above that assumed in the base offense level.
 
 
 63
 Because all three bases for departure are sound and supported by the record, and because a departure of two levels for the combination of the three grounds is not unreasonable, this court holds that the district court's decision was not error.
 
 
 64
 AFFIRMED IN PART and REVERSED IN PART; REMANDED for resentencing because the two level increase for "restraint of victim" was error as a matter of law.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral arguments. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable Harold M. Fong, United States District Court for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3