**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**William FARRELL and Roger Dubois,**
**Defendants–Appellants.**

**No. 89–1065.**

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1990.

---

Brian J. McMenimen, Boudreau, Burke, McMenimen & Barber, Boston, Mass., for Farrell.

Don Ervin, Houston, Tex., for Dubois.

Randell P. Means, Asst. U.S. Atty., Fort Worth, Tex., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEE, JONES and SMITH, Circuit Judges.

GEE, Circuit Judge:

### Facts

Defendants, Jaime Garza, Roberto Escobar, Francisco Chapa, Daniel Lopez, William Farrell and Roger Dubois were involved in a drug deal with undercover agents of the Drug Enforcement Administration (DEA) for the purchase of marijuana. Garza began negotiations with the DEA agents for the purchase of 2,000 pounds of marijuana. After a series of negotiations, Garza and Escobar were taken to a warehouse where they were shown 2,000 pounds of marijuana, which they rejected as being of poor quality. Several days later the DEA agents showed Garza and Escobar a new load of marijuana. This time, Garza and Escobar approved the quality.

The next day, Garza and Escobar were joined by Chapa and Lopez, all of whom checked into a motel in the Fort Worth area. The day after that, Garza again met with the DEA agents—this time, to inform them he had a buyer, later identified as William Farrell, who wished to buy only 500 pounds of marijuana. After further negotiations, the DEA agents reluctantly agreed to the sale of the lesser amount. Shortly thereafter, the agents met Farrell in a room at the motel. Farrell then left the purchase money in the motel room with Dubois, while he, Garza and Escobar went with the agents to a warehouse to look at the marijuana. After Farrell indicated that he was satisfied with the quality of the marijuana, he, Garza and Escobar were arrested at the warehouse, while Chapa, Lopez and Dubois were arrested at the motel. Farrell and Dubois were charged with, among other things, one count of Interstate Travel in Aid of Racketeering, in violation of 18 U.S.C. Section 1952. To this count both appellants plead guilty; the other charges were dismissed. A presentence report, prepared by the United States probation officer, set forth calculations of the defendants' sentences pursuant to the sentencing guidelines. These calculations took into account the full amount of marijuana under negotiation, 2,000 pounds.

The presentence report also labeled Farrell an organizer, giving him a two level increase under section 3B1.1(c) of the sentencing guidelines. Farrell objected to this increase, arguing that, instead, he deserved a two level reduction for being only a minor participant. The district court denied Farrell's request, but did give him a two level reduction for acceptance of responsibility. The court ultimately arrived at an offense level of 30, producing a sentencing range of 97 to 121 months imprisonment. Because the maximum sentence authorized under guideline section 5G1.1(a) for violations of 18 U.S.C. section 1952 is 60 months, Farrell was sentenced to 60 months in prison, with three years of supervised release, a $5,000 fine and a $50 special assessment.

The presentence report also labeled Dubois as an organizer and he too received a two level increase under section 3B1.1(c) of the guidelines. Again, because the calculated range of sentence exceeded the maximum allowed under guideline section 5G1.-1(a), Dubois received the same sentence as Farrell. Farrell and Dubois appeal.

Both argue that the district court erred when it based its calculations on the purchase of 2,000 rather than 500 pounds of marijuana. Farrell further argues that the court erred when it refused to find him a minor participant and reduce his offense level by two. Dubois further argues that the court erred when it found him to be an organizer, increasing his offense level by two. We affirm.

## Discussion

### 1. *2,000 vs. 500 Pounds*

■ A sentence will not be overturned on appeal so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous. *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.1989). Sentencing guideline section 2E1.2, applicable to Travel in Aid of a Racketeering Enterprise, provides that the base offense level be the greater of 6 or the "offense level applicable to the ... unlawful activity in respect to which the travel or transportation was undertaken." The appellants contend that the "unlawful activity" for which the travel was taken was the purchase of 500 pounds of marijuana. The Government contends that the unlawful activity for which the travel was taken was to participate in an uncompleted conspiracy contemplating the sale and distribution of at least 2,000 pounds of marijuana.

The appellants plead guilty to the Travel in Aid charge to avoid prosecution on a charge of conspiracy to possess with intent to distribute marijuana. 21 U.S.C. § 846. Guideline section 2D1.4 provides that the offense level for an incomplete conspiracy "shall be the same as if the object of the conspiracy ... had been completed." Although Farrell agreed to buy only 500 pounds, he was a member of a conspiracy that anticipated the purchase and distribution of at least 2,000 pounds of marijuana. The judge's use of the 2,000 pound figure in applying the sentencing guidelines was not clearly erroneous.

### 2. *Farrell was not a "minor participant."*

■ Farrell contends that the court erred when it denied his request for a two level reduction under the guidelines for being a "minor participant." This contention is without merit.

Application Note 3 to guideline section 3B1.2 defines "minor participant" as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." The background notes to section 3B1.2 state that "[t]his section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."

Farrell produced approximately $200,000 in cash for the purchase of 500 pounds of marijuana; he dictated how and where the transaction would take place; he required that the money remain with Dubois while he went to view the marijuana; he conducted a detailed examination of the marijuana; and he gave final approval for the purchase. The court's refusal to find Farrell a "minor participant" was not error.

### 3. *Dubois was an "organizer, leader, manager, or supervisor."*

■ Dubois contends that the court erred when it found him to be an "organizer" under the Guidelines. It did not.

Section 3B1.1(c) of the guidelines directs that the offense level be increased two levels if the defendant was an "organizer, leader, manager or supervisor in any criminal activity...." The district court did not err when it held that Dubois acted in such a capacity. There is ample evidence to support the notion that Dubois held a leadership role.

As the Government contends, the increase in Dubois's offense level is supported by the fact that Dubois was left in

charge of nearly $200,000 in cash when Farrell left to examine the marijuana. In fact, Dubois was not only left in charge of the $200,000, he was found counting the money—an action indicating a leadership role. Further, Dubois purchased, in his own name, a truck to be used in furtherance of the conspiracy. He also traveled from New York in furtherance of the conspiracy and held a key to a motel room containing $27,000 in cash. We cannot say that the district court was clearly erroneous when it determined that Dubois was a "organizer, leader, manager, *or* supervisor." (emphasis added).

We, therefore, AFFIRM the judgment of the district court in all respects.