**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sixto Humberto SANCHEZ,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Reyes Acebes BARAJAS,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard T. TERRONES,**
**Defendant–Appellant.**

**Nos. 89–50427, 89–50428 and 89–50433.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1990.

Decided July 17, 1990.

William R. Burgener, San Diego, Cal., for defendant-appellant, Sixto Humberto Sanchez.

Susan Cardine, San Diego, Cal., for defendant-appellant, Reyes Acebes Barajas.

Ronald Vincent Lolordo, San Diego, Cal., for defendant-appellant, Richard T. Terrones.

Laura J. Birkmeyer, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before ALARCON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

ALARCON, Circuit Judge:

Reyes Acebes Barajas, Sixto Humberto Sanchez, and Richard Trinidad Terrones appeal from the district court's imposition of sentence. Each defendant was found guilty after a jury trial of importation of a controlled substance in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952 and 960, conspiracy to import a controlled substance in violation of 21 U.S.C. §§ 952, 960, and 963, possession of a controlled substance with intent to distribute in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), and conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846.

## PERTINENT FACTS

At 6:00 p.m. on December 15, 1989, acting on information in the United States Customs Treasury Enforcement Communication System, border agents at the San Ysidro Port of Entry directed three pickup trucks attempting to cross the border from Mexico into the United States to secondary inspection. The trucks, one driven by each appellant, were traveling minutes apart. Sanchez and Terrones crossed first, in pickup trucks outfitted with camper shells, and Barajas followed in a pickup truck with an open bed. After an inspection, the agents discovered secret compartments that had been built into the fronts of the two camper shells. In the truck driven by Sanchez, the agents found approximately 147 kilograms of 100 percent pure cocaine. In the truck driven by Terrones, the agents found 129 kilograms of 85 percent pure cocaine.

Barajas, Sanchez, and Terrones were each indicted for importation of a controlled substance, conspiracy to import a controlled substance, possession of a controlled substance with intent to distribute, and conspiracy to import a controlled substance with intent to distribute. Following a jury trial, Barajas, Sanchez, and Terrones were each convicted of all charges. Sanchez and Terrones each received a prison sentence of 210 months. The district court expressly found that Sanchez and Terrones were not minor participants in the offense and had not accepted responsibility for their conduct. The district court concluded that Barajas played a managerial role in the offense. Barajas received a sentence of 293 months in prison. Each appellant timely appealed.

## I. Due Process Challenge to the Prosecutor's Role under the Guidelines

Barajas contends that the Sentencing Guidelines violate the due process clause of the fifth amendment by effecting a *de facto* transfer of sentencing authority from the district court to the prosecutor. Barajas argues that "[t]his newly acquired power of the prosecutor's results from 1) the prosecutor's unbridled discretion to choose from among many crimes when charging a defendant, and 2) the fact that, once the charges are fixed, the Sentencing Guidelines foreclose any discretion on the part of the judge in fashioning a sentence." Appellant Barajas' Opening Brief at 7. Barajas specifically attacks the prosecution's decision to seek an enhancement for his managerial role in the offense, pursuant to United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.) § 3B1.1 (1989). "Whether application of the Guidelines violates fifth amendment guarantees of due process is a question of law and is reviewed *de novo.*" *United States v. Brady*, 895 F.2d 538, 539 (9th Cir.1990).

Barajas' first challenge concerns a feature of the prosecution's role that is neither novel under the Sentencing Guidelines nor a violation of an accused's due process rights. As the Supreme Court stated in *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), " '[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.' " *Id.* at 607, 105 S.Ct. at 1530 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)); *see also United States v. Carrasco*, 786 F.2d 1452, 1455 (9th Cir.1986) ("Charging decisions are generally within the prosecutor's exclusive domain."); *United States v. Miller*, 722 F.2d 562, 565 (9th Cir.1983) ("[S]eparation of powers requires that the judiciary remain independent of executive affairs.... Charging decisions are generally within the prosecutor's exclusive domain."). As long as the decision to prosecute is not " ' "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," ' " the prosecutor's charging discretion remains unfettered. *Wayte v. United States*, 470 U.S. at 608, 105 S.Ct. at 1531 (quoting *Bordenkircher v. Hayes*, 434 U.S. at 364, 98 S.Ct. at 668 (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962))). Barajas makes no allegation of selective prosecution in this case.

■ Barajas offers *United States v. Roberts*, 726 F.Supp. 1359 (D.D.C.1989), to support his argument that the sentencing court's role has become largely ministerial under the Sentencing Guidelines. In *Roberts*, the district court observed that under the Guidelines "what is new and what is revolutionizing the criminal justice system is that, unlike in the past, when the prosecutor now selects the charge, his decision is generally tantamount also to a decision as to the sentence." *Id.* at 1366 (footnotes omitted). The district court in *Roberts* also commented that due process protections were vitiated in sentencing under the Guidelines because "first, the prosecution almost invariably has a choice among a considerable number of statutes and guideline provisions for proceeding against a defendant accused of criminal activity; and second, the mandatory sentencing laws and

the guidelines have brought about such relative inflexibility with respect to sentencing that, once the charges are fixed, the judicial contribution is ... largely ministerial." *Id.* at 1363, 1368 ("It is not necessary, however, to rest the resolution of the cases before the Court on so broad a ruling...."). Barajas contends that the Sentencing Guidelines constrict the sentencing court's discretion and violate due process by permitting the prosecutor to seek an enhancement under U.S.S.G. § 3B1.1.

We are unpersuaded by the district court's reasoning in *Roberts.* We have recently held that the Sentencing Guidelines' limitation of the sentencing court's discretion does not violate a defendant's procedural due process rights. *United States v. Brady,* 895 F.2d 538, 541–43 (9th Cir.1990). In *Brady,* we recognized that

> "Procedurally, the only difference between the sentencing process under the guidelines and the prior indetermin-te sentencing system is the reduction of the sentencing court's discretion.... The guidelines define explicitly the means by which a court should determine a sentence, and require a sentencing court to justify any departure. *See* 18 U.S.C. § 3553(c). A defendant 'has the right to appear, to offer evidence, and to challenge the Government's evidence.'"

*Id.* at 542 (quoting *United States v. Thomas,* 884 F.2d 540, 544 (10th Cir.1989)) (quoting *United States v. Vizcaino,* 870 F.2d 52, 56 (2d Cir.1989)). "In short, 'the Sentencing Guidelines provide—if nothing else—satisfactory procedural safeguards to satisfy the demands of the due process clause.'" *Id.* (quoting *United States v. Vizcaino,* 870 F.2d at 56).

These procedural safeguards are set forth in 18 U.S.C. §§ 3552 and 3553 and Fed.R.Crim.P. 32. We have summarized those procedures as follows:

> 18 U.S.C. § 3552(d) mandates that the defendant receive a copy of his or her presentence report a minimum of ten days in advance of sentencing. Prior to imposition of sentence, the court must permit the government and the defendant to submit materials addressing the accuracy of the presentence report. 18 U.S.C. § 3553(d). Fed.R.Crim.P. 32(a)(1) also requires that the court provide the defendant with notice of the probation officer's determination of "the sentencing classifications and sentencing guideline range believed to be applicable." Rule 32(a)(1) guarantees that the defendant have the opportunity to comment upon these conclusions, as well as any facts contained in the presentence reports.

*United States v. Nuno–Para,* 877 F.2d 1409, 1415 (9th Cir.1989). In addition, the sentencing court must provide a defendant with notice of an intended upward departure and afford his counsel an opportunity to comment. *Id.* Because a defendant is accorded an adequate opportunity to assist the district court in arriving at its sentencing decision, the Sentencing Guidelines are procedurally sufficient to survive due process scrutiny under the balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). *United States v. Brady,* 895 F.2d at 542–43.

The Sentencing Guidelines' procedural safeguards are not nullified by section 3B1.1. Section 3B1.1 requires the sentencing court to assess a defendant's role in the offense and impose an enhancement only if it concludes that the defendant was an "organizer, leader, manager, or supervisor" in the criminal activity. U.S.S.G. § 3B1.1. The government must prove the defendant's role in the offense by a preponderance of the evidence. *United States v. Wilson,* 900 F.2d 1350, 1354 (9th Cir.1990). Furthermore, the defendant may appear, offer evidence, and challenge the government's evidence of his role in the offense. *United States v. Brady,* 895 F.2d at 542. The resolution of any disputed sentencing issue is the exclusive province of the judge. *United States v. Belgard,* 894 F.2d 1092, 1099 (9th Cir.1990). Accordingly, the prosecutor's role under section 3B1.1 "easily survive[s] procedural due process scrutiny." *United States v. Brady,* 895 F.2d at 543.

## II. The District Court's Finding that Barajas was a Manager or Supervisor

The presentence report contained a recommendation that Barajas' offense level be increased by two points pursuant to U.S. S.G. § 3B1.1 because of his managerial role in the cocaine-smuggling operation. The district court made a finding, as required by section 3B1.1, that Barajas acted as a manager or supervisor in the commission of the offense and accepted the probation officer's recommendation to increase Barajas' offense level. Barajas contends that the district court's finding that he acted as a manager or supervisor is clearly erroneous.

The government asserts that Barajas failed to preserve this issue for appeal because he did not file a written objection to the presentence report or raise an objection to the district court's finding at the sentencing hearing, pursuant to Fed.R.Crim.P. 32(c)(3). The government relies on authority from this circuit that provides that a party must raise an objection to an adverse ruling by the district court in order to preserve it for appeal. *See United States v. Hayden,* 860 F.2d 1483, 1485 (9th Cir. 1988) ("As a general proposition, a party must raise an objection initially to the trial court in order to preserve it for appeal."); *Tatum v. Christensen,* 786 F.2d 959, 963 (9th Cir.1986) ("Our jurisdiction to decide issues raised for first time on appeal is discretionary, but exercised only if the issues are purely legal, central to the case, and important to the public." (citations omitted)). Although no case in this circuit has addressed the issue whether a defendant's failure to raise objections pursuant to Fed.R.Crim.P. 32(c)(3) waives appeal of a district court's findings of fact at sentencing, the Eleventh Circuit has recently confronted this important issue. *See United States v. Jones,* 899 F.2d 1097, 1102–03 (11th Cir.1990) (court of appeals exercises its supervisory power to direct the district courts to give the parties an opportunity to object to district court's ultimate findings of fact and conclusions of law after the imposition of sentence, but requires a clear articulation of objections by parties to preserve issues for appellate review).

■ We do not resolve this serious question in the instant matter, however, because we have concluded from our independent review of the record that Barajas preserved this issue for appeal. At the sentencing hearing, the government argued that Barajas acted as a manager pursuant to section 3B1.1, in part because he owned the load vehicles. In response, Barajas' counsel reminded the district court that the issue of ownership was in dispute because the only evidence that supported Barajas' ownership of the load vehicles came from a convicted felon. However inartfully, this contention brought to the district court's attention the fact that Barajas disputed the evidence relied upon by the government to show that he acted as a manager pursuant to section 3B1.1.

■ Barajas argues that each of the defendants acted as a joint venturer in the conduct of the offense, and, therefore, the district court's finding that he acted as the manager of the enterprise is not supported by the record. We review a district court's findings under section 3B1.1 under the clearly erroneous standard. *United States v. Wills,* 881 F.2d 823, 828 (9th Cir.1989).

U.S.S.G. § 3B1.1 provides:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. The application notes to section 3B1.1 provide:

1. A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted.
2. In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.
3. In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S.S.G. § 3B1.1 application notes.

A variety of factors support the district court's determination that Barajas acted as a manager in the commission of the offense. First, the nature of the offense indicated a sophisticated smuggling operation. The load vehicles contained a large amount of exceptionally pure cocaine secreted in expertly designed compartments. Second, the evidence adduced at trial and the statements of Barajas' co-defendants in their presentence reports indicate that Barajas supervised the preparation of the trucks used in the commission of the offense. Terrones stated that Barajas directed him to register the load trucks under false names. Sanchez stated that Barajas had told him to buy an additional camper shell and the parts necessary to construct a false front end. Sanchez purchased these items on February 12, 1988. Barajas had purchased the first camper shell and parts on December 10, 1987, several months earlier. Third, Barajas recruited his accomplices. Fourth, the evidence adduced at trial indicated that Barajas exercised decisionmaking authority. At the time of the border crossing, Barajas was driving a truck several vehicles behind the load trucks. Charles Jones, an agent for the Drug Enforcement Agency, testified that the owner or supervisor of a contraband shipment will often monitor that shipment. In the agent's opinion, Barajas' position behind the load trucks was consistent with such monitoring activity. Furthermore, at the time of his arrest, Barajas was in possession of a paper with the following notations:

> trokes 26 2 7.000 casa tel 0 500, trucks 1213.000,00, carro 3.000 Hector 1,000, chosadis 90.000 400,000 casa 15.000, trokes 7.500.00 Hector 1.000, chosadis 90.000 migra 4,000 carro 2,50000 Humberto? 50.000 ulta casa 5.000 gastos 1.000

An interpreter testified that, in border Spanish, "trokes" means trucks, "carro" means car, "chosadis" means drivers, "migra" means Border Patrol Officers, and "gastos" means expenses. The government argued, and the district court agreed, that this document was an expense sheet.

These factors demonstrate that Barajas was an organizer of this criminal activity. *See United States v. Herrera,* 878 F.2d 997, 1002 (7th Cir.1989) (enhancement under section 3B1.1 proper when defendant exhibited decisionmaking authority and organizational role in commission of offense). We conclude that the district court's finding that Barajas acted in a managerial capacity is not clearly erroneous.

III. *The District Court's Finding that Sanchez and Terrones were not Minor Participants*

 Sanchez and Terrones assert that the district court erred in finding that they were not minor participants in the offense. "Whether a defendant is a 'minor' or 'mini-

mal' participant in the criminal activity is a factual determination subject to the clearly erroneous standard." *United States v. Sanchez–Lopez,* 879 F.2d 541, 557 (9th Cir. 1989). The defendant must prove his status as a minor participant by a preponderance of the evidence. *United States v. Howard,* 894 F.2d 1085, 1090 (9th Cir.1990).

U.S.S.G. § 3B1.2 provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2. The commentary to section 3B1.2 states:

1. Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

2. It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.

3. For purposes of § 3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.

*Background:* This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case.

U.S.S.G. § 3B1.2 commentary. The downward adjustments for minimal or minor participation in the criminal activity "are to be used infrequently." *United States v. Gillock,* 886 F.2d 220, 222 (9th Cir.1989) (per curiam). "[A] district court is not compelled to determine whether a defendant was or was not the least culpable participant in determining whether that defendant's role was 'minor.'" *United States v. Rexford,* 903 F.2d 1280, 1282 (9th Cir.1990).

■ Sanchez contends that he was primarily a courier of the cocaine. He asserts that his involvement was limited to a few specific tasks that Barajas asked him to perform. The district court rejected this argument, noting that Sanchez, by his own admission, recruited Terrones to drive one of the trucks. In addition, the district court relied on the fact that Sanchez had purchased one of the camper shells and the components needed to build the secret compartment approximately ten months before the commission of the offense. The district court also considered the fact that Sanchez recruited a woman to act as a decoy on the date of the commission of the offense. Finally, the district court noted that 147 kilograms of pure cocaine were found inside the truck driven by Sanchez.

These facts demonstrate that Sanchez was more than a mere courier. The district court's finding that Sanchez was not a minor participant in the offense is not clearly erroneous. *See id.* (defendant not a minor participant in marijuana smuggling operation when he packaged fifteen pounds of marijuana over three days); *United States v. Rigby,* 896 F.2d 392, 393–94 (9th Cir. 1990) (defendant not a minor participant in possession with intent to distribute charge when he was sole occupant of a car in which 173 grams of methamphetamine and

a loaded handgun were found); *United States v. Howard,* 894 F.2d at 1088–89 (defendant not a minor participant in conspiracy to rob a bank when he discussed plan with organizer, scouted bank, procured getaway plane, and served as pilot of plane); *United States v. Gillock,* 886 F.2d at 221–22 (defendant not a minor participant in conspiracy to distribute methamphetamine when methamphetamine, filter papers, and loaded gun found in defendant's bedroom); *United States v. Sanchez–Lopez,* 879 F.2d at 557 (defendant not a minor participant when he was the driver of car in which all the narcotics were found, his fingerprints were on the plastic bags containing the narcotics, and significant quantity—574 grams of heroin—was confiscated).

■ Terrones also asserts that he was primarily a courier of the cocaine. He argues that he was a heavy cocaine user and participated in the commission of the offense solely to acquire money for his cocaine habit. In rejecting this argument, the district court noted that Terrones was involved in the planning stages of the offense. The record supports the district court's finding. Terrones registered the trucks under false names. He had the trucks repaired in his automobile repair shop to prepare them for the border crossing. He recruited a woman and her children to act as decoys in the border crossing. In addition, the district court noted that Terrones transported 129 kilograms of cocaine that was 85 percent pure. These facts amply demonstrate that Terrones was not a minor participant in the offense.

IV. *The District Court's Finding that Sanchez and Terrones Had Not Accepted Responsibility*

■ Sanchez and Terrones contend that the district court erred in finding that they had not accepted responsibility. "Whether or not a defendant has accepted responsibility for his crime is a factual determination" subject to the clearly erroneous standard of review. *United States v. Gonzalez,* 897 F.2d 1018, 1019 (9th Cir.1990).

U.S.S.G. § 3E1.1 provides:

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

U.S.S.G. § 3E1.1. The commentary to section 3E1.1 provides, in pertinent part:

1. In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(b) voluntary payment of restitution prior to adjudication of guilt;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense; and

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

2. Conviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a chal-

lenge to the applicability of a statute to his conduct).

U.S.S.G. § 3E1.1 commentary. Although a defendant who elects to go to trial is still eligible for the two-point reduction provided for in section 3E1.1, " '[a] defendant who maintains her innocence at trial, and then purports to accept responsibility afterward, may have a difficult time persuading the trial judge that her later position is sincere rather than merely convenient.' " *United States v. Gonzalez*, 897 F.2d at 1020 (quoting *United States v. Thomas*, 870 F.2d 174, 177 (5th Cir.1989)).

■ Both Sanchez and Terrones elected to proceed to trial in this case. Although neither Sanchez nor Terrones testified at trial, their trial strategy was to attempt to persuade the jury that the government's proof did not demonstrate that they had knowledge of the cocaine secreted in the respective load trucks. After the jury returned verdicts of guilty, Sanchez and Terrones each told the probation officer that he was merely a courier. In their statements at allocution, they did not admit that they had participated in the planning of the offense.

The district court denied a two-point reduction for acceptance of responsibility, finding that Sanchez and Terrones had failed to acknowledge the true extent of their participation in the offense. The extensive evidence of Sanchez's and Terrones' roles in the preparation and planning for the offense supports the district court's conclusion that their post-verdict attempts to persuade the court that they were mere couriers was in fact an attempt to understate their roles in the offense. The district court's finding that Sanchez and Terrones did not accept responsibility for their criminal conduct is not clearly erroneous.

V. *Identity of the Confidential Informant*

■ The San Diego Police Department's Narcotics Task Force began surveillance of the appellants in October 1988 in response to a confidential informant's tip. Terrones sought disclosure of the informant's identity during pretrial hearings. The district court denied his request after conducting an *in camera* interview with the informant. Terrones contends that the district court erred in refusing to disclose the confidential informant's identity. We review "for abuse of discretion the court's denial of a motion to compel disclosure of an informant's identity." *United States v. Johnson*, 886 F.2d 1120, 1122 (9th Cir. 1989), *cert. denied*, — U.S. —, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990).

The government has a limited privilege to withhold the identity of a confidential informant. *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir.1990). An informant's confidentiality serves important law enforcement objectives. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). Determining whether to reveal an informant's identity

> calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 628–29. Although the informer's privilege must give way when the disclosure of the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," *id.* at 60–61, 77 S.Ct. at 627–28, the burden is on the movant to demonstrate the need for disclosure. *United States v. Johnson*, 886 F.2d at 1122. The "mere suspicion that information will prove helpful is insufficient to require disclosure." *Id.* (citing *United States v. Buffington*, 815 F.2d 1292, 1299 (9th Cir.1987)); *see also United States v. Tousant*, 619 F.2d 810, 813 (9th Cir.1980) ("Mere speculation about what the informer's testimony might be is not sufficient."); *United States v. Trejo–Zambrano*, 582 F.2d 460, 466 (9th Cir.) (Movant "must do more than speculate that disclosure will prove helpful."),

*cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978).

We have independently reviewed the transcript of the district court's *in camera* interview with the confidential informant. We conclude that the disclosure of the informant's identity would not have been helpful to the defense or essential to the fair determination of this cause. The district court did not abuse its discretion in denying Terrones' motion to compel the disclosure of the confidential informant's identity.

## CONCLUSION

The district court's imposition of sentence is AFFIRMED.