913 F.2d 770
 UNITED STATES of America, Plaintiff-Appellee,
v.
Santiago MARES-MOLINA, Defendant-Appellant.
 No. 89-50706.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 9, 1990.
Decided Sept. 10, 1990.
 
 Peter A. Vance, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.
 Mary A. Schneider and Shane P. Harrigan, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before REINHARDT, LEAVY and RYMER, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 Santiago Mares-Molina ("Mares") appeals from his sentence imposed under the sentencing guidelines following a plea of guilty to conspiracy to import cocaine in violation of 21 U.S.C. Secs. 952, 960, and 963. Mares argues that the district court's finding that he was "an organizer, leader, manager, or supervisor in [the] criminal activity" pursuant to guideline section 3B1.1(c) is not supported by the record. We agree, and thus vacate the two-point upward adjustment in offense level and reduce Mares' sentence to twelve months, the maximum allowable under the guidelines.
 
 FACTS AND PROCEEDINGS
 
 2
 On April 20, 1989, United States Operation Alliance Agents received information from the Mexican Federal Judicial Police that they had arrested Rigoberto Perez-Morales for the murder of a suspected narcotics trafficker in Mexico and had seized $24,000 and approximately seven kilograms of cocaine. During their investigation, the agents learned that Perez and others, including a man named Ruben Zazueta-Ruiz, were smuggling cocaine into the United States in the tires of large diesel tractor/trailers. They learned that once over the border, the tractor/trailers were taken to Mares Trucking Co. located in Chula Vista, California.
 
 
 3
 Acting on this information, the agents learned that the defendant, Santiago Mares-Molina, was the owner of Mares Trucking and the lessor of the warehouse in which the cocaine was allegedly stored. On April 21, 1989, the agents executed a warrant to search the Mares Trucking warehouse. During the course of the search, the agents discovered cocaine paraphernalia and twenty-three grams of cocaine in the desk drawer of the office, and cocaine residue and remnants of cocaine packaging inside twenty large tires stacked in a stake-bed truck. Also discovered were various invoices evidencing expenditures totalling approximately $60,000 made by Mares Trucking between December 1988 and April 1989.
 
 
 4
 On April 24, 1989, the agents arrested Mares at his apartment. No contraband was found upon the search of the residence. Mares originally denied any knowledge that the warehouse was being used to import cocaine from Mexico for redistribution in the United States. However, when asked to explain the cocaine residue found in the warehouse, he recanted his previous statement. Mares told the agents that three months prior he had either borrowed or been given $10,000 ($8,000 plus $2,000 for the first month's rent) from Ruben Zazueta-Ruiz in order to establish his business, Mares Trucking. He admitted that he later learned that the warehouse was being used as a drop house for cocaine, but that he did not try to stop it. Mares told the probation officer that he allowed Zazueta to stay because he was afraid of him.
 
 
 5
 Mares was subsequently indicted for conspiracy to import cocaine in violation of 21 U.S.C. Secs. 952, 960, and 963. On September 21, 1989, Mares and the government entered into a plea agreement in which it was stipulated that the amount of cocaine possessed for the purpose of sentencing was twenty-three grams, for an initial offense level of twelve. The parties also agreed that a two-point downward adjustment for acceptance of responsibility was warranted in light of Mares' statements to the agents upon his arrest. Both parties reserved the right to argue for an upward or downward adjustment pursuant to sections 3B1.1[1] and 3B1.2[2] with respect to Mares' role in the conspiracy.
 
 
 6
 On November 27, 1989, the district court adopted the analysis of the presentence report with respect to its recommendation that Mares' offense level be adjusted upward two points pursuant to section 3B1.1(c). The presentence report stated:
 
 
 7
 Adjustment for Role in the Offense: According to the Case Agents and the Assistant U.S. Attorney assigned to the case, the defendant held the role of manager or organizer of the trucking business. He is not considered the source of the drugs or even a distributor. His role was to provide a safe location to store the cocaine pending distribution. It therefore would seem appropriate to increase the offense by two levels for an aggravated role in the offense.
 
 
 8
 Relying on certain information contained in the presentence report and the pretrial testimony of the investigating and arresting officer, Agent Rodriguez, the court found "that the defendant as a lessor of [the] warehouse was involved as whatever you care to characterize him, organizer or manager, or whatever. But he certainly was involved significantly in this operation."
 
 
 9
 Adding two points for Mares' aggravating role and subtracting two points for his acceptance of responsibility, the court arrived at an offense level of twelve. Mares' criminal history category was I, thus making his sentence range ten to sixteen months. The district court sentenced Mares to a term of sixteen months followed by a three-year term of supervised release. Mares timely appeals this sentence.
 
 DISCUSSION
 
 10
 Mares contends that the government failed to prove by a preponderance of the evidence that he was an organizer or manager in the conspiracy to import cocaine.[3] See United States v. Wilson, 900 F.2d 1350, 1354 (9th Cir.1990) (circumstances justifying upward departure must be proven by preponderance of the evidence). Whether Mares was "an organizer, leader, manager, or supervisor" pursuant to section 3B1.1 is a question of fact reviewable under the clearly erroneous standard. United States v. Sanchez, 908 F.2d 1443, 1447 (9th Cir.1990); United States v. Carvajal, 905 F.2d 1292, 1295 (9th Cir.1990).
 
 
 11
 Application Note 3 of section 3B1.1, which sets forth the factors to be considered in distinguishing "leaders and organizers" from "managers and supervisors," indicates that some degree of control or organizational authority over others is required in order for section 3B1.1 to apply.
 
 
 12
 Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 13
 Sentencing Guidelines, Sec. 3B1.1, Application Note 3. The First Circuit expounded on the control requirement in United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir.1990), wherein it held that in order for section 3B1.1(c) to apply,
 
 
 14
 the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms 'organizer, leader, manager and supervisor,' each of which suggests the presence of underlings or subordinates.
 
 
 15
 See United States v. Anderson, 895 F.2d 641, 646 (9th Cir.1990) (defendant "gave specific instructions and planned their conduct throughout the course of the enterprise").
 
 
 16
 We conclude that there is insufficient evidence to justify a finding that Mares was an organizer, leader, manager, or supervisor in the conspiracy to import cocaine. There are no facts to support the conclusion that Mares exercised control or was otherwise responsible for organizing, supervising, or managing others in the commission of the offense.[4] Cf. Sanchez, 908 F.2d at 1448 (evidence the defendant "supervised the preparation of trucks used" in the smuggling operation and "directed" others in the execution of the scheme); Carvajal, 905 F.2d at 1296 (evidence of the defendant's "overall control" of drug transaction); United States v. Avila, 905 F.2d 295, 298-99 (9th Cir.1990) (evidence the defendant "coordinated the procurement and the distribution of" the drugs). The evidence considered by the district court during sentencing only established that cocaine was delivered in trailer/tractorires to a warehouse leased by Mares Trucking. We cannot conclude that Mares organized or controlled his coconspirators within the meaning of section 3B1.1(c) merely because he was the owner of the trucking business which leased the warehouse in which the cocaine was off-loaded.
 
 
 17
 The holdings of United States v. Carrillo, 888 F.2d 117 (11th Cir.1989) (per curiam), and United States v. Farrell, 893 F.2d 690 (5th Cir.1990), do not require a difference result. In Carrillo, a two-point upward adjustment under section 3B1.1(c) was warranted because the defendant admitted that he supervised other similar low-level employees in a narcotics distribution ring. 888 F.2d at 118. There was also evidence that the defendant managed the "stash house," received cocaine, and distributed cocaine to others. Id.
 
 
 18
 Similarly, in Farrell, the defendant was properly found to be a leader in a drug deal with undercover agents due to the fact he "was not only left in charge of the $200,000 [to be used to purchase the marijuana], he was found counting the money--an action indicating a leadership role." 893 F.2d at 692. There was also evidence that he traveled from New York to Fort Worth to help arrange the sale and that he held a key to a motel room containing $27,000 in cash. Id. No similar involvement has been shown here.
 
 
 19
 We conclude that the district court's finding that Mares was an "organizer, leader, manager, or supervisor" in the conspiracy to import cocaine was clearly erroneous, and hence the two-point upward adjustment in offense level was improper. Accordingly, we vacate the four-month increase in sentence which resulted from the erroneous upward adjustment, and reduce the sentence to twelve months, the maximum sentence which may be imposed on a defendant with a criminal history category of I and an offense level of ten.
 
 
 20
 VACATED.
 
 RYMER, Circuit Judge, dissenting:
 
 21
 I respectfully dissent, because one may "manage" a thing, such as a business or money or a warehouse, as well as a person.
 
 
 22
 "We construe the terms in the Sentencing Guidelines using their plain meaning." United States v. Anderson, 895 F.2d 641, 646 (9th Cir.1990) (quoting United States v. Restrepo, 884 F.2d 1294, 1296 (9th Cir.1989). U.S.S.G. Sec. 3B1.1(c) provides that, based on the defendant's role in the offense, the offense level should be increased by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than [an activity that involved five or more participants]." See Anderson, 895 F.2d at 644; see also United States v. Carvajal, 905 F.2d 1292, 1294-95 (9th Cir.1990).
 
 
 23
 The Guidelines do not define "manager," but Webster says that a manager is "one who has the conduct or direction of anything; as, the manager of a railroad; the manager of a lottery." Webster's New Universal Unabridged Dictionary (2d Ed.). The Oxford American Dictionary similarly defines manager as "a person who is in charge of the affairs of a business etc." Random House is to the same effect: to manage is "to have charge of or responsibility for," or "to handle, direct, govern, or control in action or use"; a manager is a "person who manages: the manager of our track team; " or "a person charged with the control or direction of an institution, business or the like," or "a person who controls and manipulates resources and expenditures, as of a household." The Random House College Dictionary (3d ed.).
 
 
 24
 The majority does not discuss the plain meaning of "manage," but concludes that Application Note 3 to Sec. 3B1.1 "indicates that some degree of control or organizational authority over others is required in order for section 3B1.1 to apply."[1] Even if Sec. 3B1.1 were not capable of common sense construction, I disagree that the Note is reasonably susceptible of that view. It does not purport to set forth prerequisites for finding the defendant was a "manager" ;[2] rather, Note 3 concerns the factors a court should consider in distinguishing a leadership and organizational role from one of management or supervision.[3] Even so, it does not speak in terms of what is required for the one or the other. Instead, the Note indicates that the degree to which control or authority is exercised over others is one of several factors which should influence the determination whether a defendant is more like a leader, or more like a manager.[4]
 
 
 25
 To construe "manager" to include one who controls a business or money (as well as people) is consistent with the structure of the Guidelines. The Introductory Commentary to Part B provides only that "[w]hen an offense is committed by more than one participant, Sec. 3B1.1 or Sec. 3B1.2 (or neither) may apply." The level of the defendant's knowledge of the activities of others is specifically addressed in Sec. 3B1.2, dealing with downward adjustments for a mitigating role.[5] By implication, the level of the defendant's knowledge of the activities of others is not central to Sec. 3B1.1. Other people are dispositive to the scheme of Sec. 3B1.1 only in that there must necessarily be more than one participant in order for a comparison of roles to be possible. Once that requirement is satisfied (as it is here), it is the defendant's responsibility for committing the offense that matters. The focus, therefore, should be on what the defendant did, not on the people with whom he did it.
 
 
 26
 To read Sec. 3B1.1(c) as the majority does is inconsistent with the Guidelines in that its "control over others" requirement effectively insulates any person who is part of a conspiracy but who by himself runs a stashhouse, no matter how big, or collects the money and keeps the ledgers, no matter how complicated or critical to the enterprise, from an upward adjustment based on his role in the criminal activity. It is hard to believe that the Commission intended such a result.
 
 
 27
 While the First Circuit has taken the view that control over others is required for a "manager," United States v. Fuller, 897 F.2d 1217 (1st Cir.1990), others have not. The Sixth Circuit, for example, affirmed a two-level increase under Sec. 3B1.1(c) on testimony that showed the defendant was a source of cocaine, large quantities were taken from Florida from time to time, substantial income was involved, defendant constructed a $60,000 house without a loan, defendant sold the cocaine on credit, and the activity took place over a long period of time. United States v. Barrett, 890 F.2d 855 (6th Cir.1989). The Eleventh Circuit upheld a finding that the defendant was a "supervisor" or "organizer" on evidence of his management of a stash house, receipt of cocaine, and distribution of various allotments of cocaine to others. United States v. Carrillo, 888 F.2d 117 (11th Cir.1989). The Fifth Circuit affirmed an upward adjustment on facts showing that the defendant was in charge of $200,000 to be used to purchase marijuana and was found counting it. United States v. Farrell, 893 F.2d 690 (5th Cir.1990).[6]
 
 
 28
 Although we have not yet squarely dealt with the question, in at least one case, United States v. Avila, 905 F.2d 295 (9th Cir.1990), we affirmed the district court's finding that the defendant was an "organizer or leader" based on evidence which did not include control over others. The evidence showed only that Avila was considered a heavy drug dealer, negotiated the price during drug deals, indicated he had alternative sources, and exchanged large amounts of illegal substances for large amounts of currency. To affirm a four point enhancement for Avila's role as an "organizer or leader" on those facts, but reverse a two point enhancement for Mares-Molina as a "manager" solely because there is no evidence that he exercised control over others, is not consistent.[7]
 
 
 29
 I would therefore hold that a "manager" for purpose of Sec. 3B1.1 may include one whose role in the criminal offense is responsibility for, or control of, a business, money, or operation such as a stashhouse or accounting that is integral to the enterprise.
 
 
 30
 So interpreted, the district court's characterization of Mares-Molina as a manager is not clearly erroneous. Mares-Molina was the lessor of a warehouse used by Mares Trucking. He was the signatory on lease agreements for twelve tractor trailers. There was evidence that cocaine was being smuggled into the United States in the tires of large diesel tractor/trailers. At least one delivery of 400 to 600 kilograms of cocaine had been made to Mares Trucking before three trailers, containing 1300 kilograms, were seized in route to that facility. Mares-Molina had spent approximately $60,000 on Mares Trucking in the five months of its existence; there was evidence that a co-conspirator had given or loaned him $8000, was paying the $2000 monthly lease fee, and had obtained operational permits for the lease of diesel tractors. The warehouse appeared vacant most of the time, and the lessees were in and out only once or twice a week. A search of the premises also disclosed twenty large truck tires containing cocaine residue. Finally, according to the presentence report, Mares's "role was to provide a safe location to store the cocaine pending distribution."
 
 
 31
 Such a finding is within the area of discretion that the Guidelines leave to the district court. In this case the district judge had heard testimony, knew the nature and scope of the conspiracy, and carefully adopted some facts set forth in the presentence report and rejected others. Based on his greater familiarity with the record, he found that Mares-Molina acted in a managerial capacity. The enhancement based on that finding should be affirmed.
 
 
 
 [1]
 Section 3B1.1, entitled "Aggravating Role," provides:
 Based on the defendant's role in the offense, increase the offense level as follows:
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 
 
 [2]
 Section 3B1.2, entitled "Mitigating Role," provides:
 Based on the defendant's role in the offense, decrease the offense level as follows:
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 [3]
 We note that Mares' appeal is not moot even though he has finished serving his term in prison as the sentence imposed in this case may have "collateral consequences." See United States v. Montenegro-Rojo, 908 F.2d 425, 431 n. 8 (9th Cir.1990); United States v. Drabeck, 905 F.2d 1304, 1305 n. 1 (9th Cir.1990). Because Mares was sentenced to a term in excess of thirteen months, if he is ever again sentenced under the guidelines his criminal history score will automatically be increased by three points. See Sentencing Guidelines, Sec. 4A1.1(a). Alternatively, if the challenged two-point upward adjustment is found not to apply, then Mares' criminal history score for a future conviction could only be increased by two points as the maximum sentence which may be imposed for this conviction would be twelve months. Id. Sec. 4A1.1(b)
 
 
 [4]
 A statement in the presentence report to the effect that Mares supervised or directed the unloading of cocaine on two occasions was stricken without objection from the government. In fact, the government candidly admitted that they had no evidence Mares "actually supervised or directed others to unload cocaine."
 
 
 [1]
 Opn., supra at 773
 
 
 [2]
 The complete Application Note provides:
 In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as 'kingpin' or 'boss' are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.
 
 
 [3]
 Section 3B1.1(a) and (b) require that this distinction be made, as (a) applies only if the defendant was an "organizer or leader" whereas (b) applies only if the defendant was a "manager or supervisor."
 
 
 [4]
 Nothing in the Note suggests that each factor must be present, nor does the Commentary Background suggest that for one to be a "manager" he or she must have managed others in the commission of the offense. It explains:
 This section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense. This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate. The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility.
 In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of Sec. 3B1.1(c).
 
 
 [5]
 Application Note 1 provides:
 Subsection (a) [minimal participant] applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.
 
 
 [6]
 See also United States v. Williams, 891 F.2d 921 (D.C.Cir.1989) (remanding on other grounds but not finding district court's reliance on defendant being a "manager" of a "crack house" improper for purposes of applying Sec. 3B1.1(c); United States v. Pettitt, 903 F.2d 1336 (10th Cir.1990) (remanding on other grounds but expressing no problem with adjustment on evidence that showed only that defendant allowed others to live in the house who used it to conduct the sale of crack); United States v. Otero, 890 F.2d 366 (11th Cir.1989) (Sec. 3B1.1(a) enhancement affirmed on grounds that defendant found a seller, set the price of the drug and determined a time and location for the sale); United States v. Pierce, 907 F.2d 56 (8th Cir.1990) (adjustment affirmed on evidence that defendant was main contact person between source and distributors and customers, set the price, and recruited another person into methamphetamine conspiracy). Cf. United States v. Vasquez, 874 F.2d 250 (5th Cir.1989) (increase affirmed where defendant recruited and directed a codefendant, was the main participant in negotiations with undercover officer, and used his apartment as base of operations); United States v. Mejia-Orosco, 867 F.2d 216 (5th Cir.1989), cert. denied, --- U.S. ----, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1990) (district court finding that defendant was manager, supervisor, organizer or leader affirmed on evidence that relatives of smuggled aliens were involved in the crime, thereby making the enterprise "extensive" within meaning of Sec. 3B1.1)
 
 
 [7]
 In other cases applying Sec. 3B1.1 there has been evidence that the defendant directed or controlled others, however there is no indication that that factor alone was central to their holding. See e.g., United States v. Sanchez, 908 F.2d 1443 (9th Cir.1990); United States v. Carvajal, 905 F.2d 1292 (1990); United States v. Anderson, 895 F.2d 641