995 F.2d 234
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick M. O'RILEY, Defendant-Appellant.
 No. 92-10202.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 5, 1993.*
Decided June 4, 1993.
 
 Before: POOLE, FARRIS, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Patrick M. O'Riley appeals his conviction, following a jury trial, for conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * In February 1991, a confidential informant introduced Drug Enforcement Administration agent Dawson to Melvin Hewitt via telephone. Dawson arranged to buy methamphetamine from Hewitt. Dawson wanted to buy ten ounces, but Hewitt said that his supplier was paranoid and preferred that he sell two ounces first to see how things went. He said that he would talk to his supplier after the supplier returned with Hewitt's girlfriend. Hewitt and Dawson arranged to meet at a bar.
 
 
 4
 Dawson and his partner, Landrum, went to the bar at 6:15 p.m. They called Hewitt, who said he was running late because he was waiting for his supplier and his girlfriend to return. Police surveillance showed that O'Riley and Hewitt's girlfriend arrived at Hewitt's residence around 7:15 p.m. Hewitt arrived at the bar some time after 7:00 p.m.
 
 
 5
 Hewitt gave the agents two ounces of methamphetamine. After Dawson complained that the drugs lacked a distinctive odor associated with methamphetamine, Hewitt called his supplier at his residence. Landrum spoke to the supplier, who told him that he had been a "cook" for twenty-five years and that he intentionally made the drugs odorless. He also told Landrum that he had the additional eight ounces, and that after Landrum paid Hewitt for the two ounces, Hewitt would deliver the remaining eight ounces. Landrum identified the distinctive, raspy voice on the phone as O'Riley's voice. The agents then paid Hewitt with bills with prerecorded serial numbers.
 
 
 6
 Hewitt went home to get the remaining eight ounces from his supplier. When he returned, he told the agents that his supplier had given him only six ounces. The agents asked him to clarify the price because the agreed-upon price was based on eight ounces. Hewitt then called "Pat" and clarified the price.
 
 
 7
 Hewitt then gave the agents the drugs. The agents arrested him, and he agreed to cooperate. He called his residence in a tape-recorded call and spoke to a man, whom Dawson identified as O'Riley. During the conversation, O'Riley asked questions that suggested that he was the supplier.
 
 
 8
 The agents subsequently arrested O'Riley, who was carrying a baggie of methamphetamine and an unregistered, functional .44 caliber revolver loaded with hollow point glacier rounds, which cause more trauma and are more destructive then regular bullets.
 
 II
 
 9
 O'Riley contends that the magistrate judge abused his discretion by denying O'Riley's motion to compel disclosure of the government's confidential informant. We disagree.
 
 
 10
 The government has a limited privilege to withhold the identity of a confidential informant. United States v. Sanchez, 908 F.2d 1443, 1451 (9th Cir.1990). This privilege protects the public interest in effective law enforcement by encouraging citizens to communicate information about crimes to law enforcement officials. Roviaro v. United States, 353 U.S. 53, 59 (1957). Nonetheless, if "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61.
 
 
 11
 Determining whether disclosure should be made requires the district court to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. Whether disclosure should be made depends on the particular circumstances of each case; relevant factors include "the crime charged, the possible defenses, [and] the possible significance of the informant's testimony." Sanchez, 908 F.2d at 1451 (quoting Roviaro, 353 U.S. at 62).
 
 
 12
 The defendant must prove that disclosure of the informant's identity is necessary. Id. Mere speculation that the informant's testimony may be helpful is insufficient. Id.
 
 
 13
 O'Riley contends that the confidential informant's identity was crucial to his defense that he was not the supplier, had nothing to do with the conspiracy, and was a fall guy. This speculation that the informant's testimony might be helpful is insufficient for disclosure. See Sanchez, 908 F.2d at 1451. Moreover, the informant was not involved in the drug transaction, and thus disclosure was not required. See, e.g., United States v. Jaramillo-Suarez, 950 F.2d 1378, 1387 (9th Cir.1990).
 
 
 14
 O'Riley also argues that the government never asserted that the public's interest outweighed his right to know the informant's identity. Thus, he apparently argues, the district court did not engage in Roviaro's balancing test. The district court, however, engaged in an extensive colloquy with the parties regarding whether the confidential informant's identity should be disclosed. Moreover, O'Riley, not the government, had the burden of establishing that disclosure was required. See Sanchez, 908 F.2d at 1451.
 
 
 15
 O'Riley argues, however, that an in camera hearing was required because the government failed to refute his showing of materiality. This argument is unpersuasive. First, O'Riley never requested an in camera hearing. Second, O'Riley did not provide any evidence of materiality but only speculated that the confidential informant might be helpful. Compare United States v. Ordonez, 737 F.2d 793, 807-08 (9th Cir.1984) (defendants established that informant was crucial to their defense).
 
 III
 
 16
 O'Riley contends that the district court erred by allowing Dawson to testify about out-of-court statements made by coconspirator Hewitt because the government did not prove O'Riley's connection to the conspiracy by a preponderance of the evidence. This contention fails.
 
 
 17
 As a factual predicate for the admissibility of the statements, the government must prove the existence of a conspiracy and the defendant's connection to it by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171, 181 (1987); United States v. Silverman, 861 F.2d 571, 577 (9th Cir.1988). The coconspirator's statements may be used to prove these preliminary facts, Bourjaily, 483 U.S. at 181, but because coconspirator statements are presumptively unreliable, this court requires evidence of the conspiracy and the defendant's connection to it that is independent of the coconspirator statements. Silverman, 861 F.2d at 577-78. A "slight" connection to the conspiracy is sufficient for admission of coconspirator statements. United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987).
 
 
 18
 Here, Agent Landrum spoke to the supplier on the telephone and identified the distinctive voice as O'Riley's voice. After Hewitt was arrested, he spoke with his supplier in a tape-recorded conversation, and Agent Dawson identified the voice as O'Riley's voice. In the conversation, O'Riley made statements that revealed that he was the supplier. Police surveillance placed O'Riley at Hewitt's residence. Thus, independent evidence establishes at least a "slight" connection to the conspiracy. See Penagos, 823 F.2d at 348. By introducing this evidence and the coconspirator statements, the government demonstrated O'Riley's connection to the conspiracy by a preponderance of the evidence. See Silverman, 861 F.2d at 577-78.
 
 IV
 
 19
 O'Riley contends that the district court erred by denying his motion for a judgment of acquittal because the evidence was insufficient to convict him of using a firearm in relation to a drug trafficking crime. This contention fails.
 
 
 20
 In reviewing the district court's denial of a motion for a judgment of acquittal based on alleged insufficiency of the evidence, this court must consider whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of each essential element of the crimes charged. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 21
 To obtain a conviction for use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), the government must prove beyond a reasonable doubt that the defendant (1) knowingly used or carried a firearm (2) during and in relation to a drug trafficking crime. United States v. Martinez, 967 F.2d 1343, 1346 (9th Cir.1992). If the gun's "physical proximity to the defendant at any time during the commission of the crime, or during arrest, supports the inference that it emboldened him to commit the underlying offense or to resist arrest," then the firearm may be considered available under section 924(c)(1). United States v. Torres-Medina, 935 F.2d 1047, 1050 (9th Cir.1991). Close proximity of the gun to drugs supports an inference that the gun is related to a narcotics operation. Id. at 1048-49; United States v. Power, 881 F.2d 733, 736 (9th Cir.1989).
 
 
 22
 Here, O'Riley was carrying a .44 caliber revolver when he was arrested, and thus the first prong of the test is satisfied. Moreover, he also was carrying a baggie of methamphetamine when he was arrested, and other evidence established that he was the supplier of the drug ring and that he was "paranoid." The gun was unregistered and used hollow point bullets that caused greater trauma and destruction than normal bullets. A rational trier of fact could have concluded beyond a reasonable doubt that the gun was used during and in relation to a drug trafficking crime. See Torres-Medina, 935 F.2d at 1048-50.[1]
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 O'Riley cites United States v. Phelps, 877 F.2d 28 (9th Cir.1989), for the proposition that mere possession of a gun during a drug transaction is insufficient to support a conviction under section 924(c)(1). The gun in Phelps, however, was used for barter, and thus an inference that the gun was used in relation to a drug offense was not reasonable. See 877 F.2d at 30